```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,          .
                                         .
 4              Plaintiff,               .   Case Number 21-cr-392
                                         .
 5        vs.                            .
                                         .
 6    ALAN HOSTETTER, RUSSELL TAYLOR, .
      ERIK SCOTT WARNER,                 .
 7    FELIPE ANTONIO MARTINEZ,           .   March 31, 2022
      DERRICK KINNISON, RONALD MELE,     .   1:38 p.m.
 8                                       .
                Defendants.              .
 9    - - - - - - - - - - - - - - - - -

10               TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE ROYCE C. LAMBERTH
11                UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the United States:      RISA BERKOWER, AUSA
                                  United States Attorney's Office
14                                601 D Street Northwest
                                  Washington, D.C. 20579
15

16    For Defendant Hostetter:    ALAN HOSTETTER, PRO SE

17                                KARREN KENNEY, ESQ.
                                  Kenney Legal Defense
18                                2900 Bristol Street
                                  Suite C204
19                                Costa Mesa, California 92626

20    For Defendant Taylor:       DYKE HUISH, ESQ.
                                  Law Office of Dyke Huish
21                                26161 Marguerite Parkway
                                  Suite B
22                                Mission Viejo, California 92692

23

24                        -- continued --

25
```

```
 1      APPEARANCES (CONTINUED):

 2      For Defendant Warner:        KIRA WEST, ESQ.
                                     Law Office of Kira West
 3                                   712 H Street Northeast
                                     Unit 509
 4                                   Washington, D.C. 20002

 5      For Defendant Martinez:      NICHOLAS SMITH, ESQ.
                                     David B. Smith PLLC
 6                                   1123 Broadway
                                     Suite 909
 7                                   New York, New York 10010

 8      For Defendant Kinnison:      NICOLAI COCIS, ESQ.
                                     Law Office of Nicolai Cocis
 9                                   25026 Las Brisas Road
                                     Murrieta, California 92562
10
        For Defendant Mele:          STEVEN BAILEY, ESQ.
11                                   Bailey & Romero Law
                                     680 Placerville Drive
12                                   Suite A1
                                     Placerville, California 95667
13

14      Official Court Reporter:     SARA A. WICK, RPR, CRR
                                     333 Constitution Avenue Northwest
15                                   Room 4704-B
                                     Washington, D.C. 20001
16                                   202-354-3284

17
        Proceedings recorded by stenotype shorthand.
18      Transcript produced by computer-aided transcription.

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2          (All participants present via video conference.)
 3              COURTROOM DEPUTY:  We are on the record for Criminal
 4     Case 21-392, United States of America versus Alan Hostetter,
 5     Russell Taylor, Erik Warner, Felipe Martinez, Derrick Kinnison,
 6     and Ronald Mele.
 7          Counsel, please identify yourselves, starting with the
 8     government.
 9              MS. BERKOWER:  Good afternoon, Your Honor.  Risa
10     Berkower for the government.
11              DEFENDANT HOSTETTER:  Alan Hostetter, pro se
12     defendant, with my advisor counsel, Karren Kenney, also in the
13     conference.
14              MR. HUISH:  Dyke Huish on behalf of Mr. Taylor.  He is
15     present here on line.
16              MR. SMITH:  Good afternoon, Judge.  Nick Smith on
17     behalf of Felipe Martinez, who is also on the line.
18              THE COURT:  Mr. Martinez, you can hear me okay?
19              MR. SMITH:  Judge, you're coming through a little bit
20     softly.
21              THE COURT:  Okay.  And Mr. Taylor, I didn't hear you.
22     Can you hear me okay?
23              MR. HUISH:  I can, Your Honor.  Dyke Huish on behalf
24     of Mr. Taylor.  And yes, Your Honor, I can hear you.  Thank you.
25     Good morning.
```

```
 1              MR. BAILEY:  Your Honor, Steven Bailey on behalf of
 2     Ronald Mele, who is on Zoom.
 3              THE COURT:  Okay.
 4              DEFENDANT MELE:  Good morning, Your Honor.
 5              MR. COCIS:  And Nick Cocis on behalf of Mr. Kinnison,
 6     and Mr. Kinnison is here sitting next to me.
 7              THE COURT:  And I didn't hear Ms. Kenney.  You can
 8     hear me okay?
 9              MS. KENNEY:  Yes, Your Honor, I can.  Thank you.
10              THE COURT:  Okay.  All right.
11              MS. WEST:  Good afternoon, Your Honor.  Kira West for
12     Mr. Erik Warner.
13              THE COURT:  Hi, Ms. West.  Your client is Mr. Warner,
14     who is --
15              DEFENDANT WARNER:  Yes, Your Honor.
16              MS. WEST:  He is here via video conference, Your
17     Honor.
18              THE COURT:  I can't see him.  Let me see where he is.
19              DEFENDANT WARNER:  Right here, Your Honor.
20              THE COURT:  Okay.  And you can hear me?
21              DEFENDANT WARNER:  Yes, Your Honor.
22              THE COURT:  I want to start, then, with an update on
23     where we are.  Ms. Berkower?
24              MS. BERKOWER:  Yes, Your Honor.  Thank you.
25         In the time since the last status conference, the
```

government has provided additional discovery to the defense.
First off, we provided global production number 12.  That's one
of the productions that applies to all January 6 defendants.
That included reports of law enforcement officer interviews,
search warrants, and returns for e-mail accounts and phone
information, as well as other relevant materials.

And we also provided additional case-specific discovery.
That included additional CCTV video showing certain of the
defendants at the Capitol on January 6, scoped material from
Mr. Hostetter's phone and electronic devices, and scoped
materials from a third party's phone who is relevant to the
case, and additional files containing information related to
defendant Taylor and defendant Hostetter and several others.

We do have some discovery still to come that is specific to
this particular case.  That includes one additional electronic
device, the computer of one of the defendants that has been
undergoing privilege review for the past several months.  That
privilege review has now been completed, and the FBI is now
searching the computer in accordance with the warrant.  We
expect that any responsive material will be produced in the
upcoming week.

We also expect to disclose additional investigative
materials that have been identified since the last production of
case-specific discovery.  That will be produced on a rolling
basis until trial, but there is -- and it is expected to be far

1    less than what we have already produced concerning case-specific
2    discovery, but we do have some additional material that we will
3    be preparing for production in the coming weeks.

4        We also have materials related to third parties who
5    participated in the January 6 attack who may have interacted
6    with the defendants, and we expect to be producing that in this
7    next tranche of case-specific discovery.

8        Based on the remaining discovery, we do feel that we are
9    coming toward the end of what we have in our files other than
10   anything we would be providing in our routine discovery
11   obligations as we continue to investigate the case.  Of course,
12   the investigation is still ongoing, and we find new relevant
13   material frequently.

14       But based on this, we would ask for 60 additional days to
15   continue this case for another status hearing in order to
16   continue providing the discovery I just outlined and also to
17   engage in plea negotiations.  Up until relatively recently,
18   given the amount of discovery that we still had to produce, we
19   were not able to pursue that.  But we believe that since we are
20   nearing the end of the case-specific discovery, we would like
21   some time to engage in plea negotiations now that counsel has
22   been able to receive the material we have and have some time to
23   review it.

24       And we would ask to exclude those 60 days under the Speedy
25   Trial Act on the ground that this is one of the largest criminal

1  prosecutions in U.S. history and that we continue to investigate

2  it and that the investigation generates such an enormous amount

3  of discovery, including thousands of hours of video, thousands

4  of digital devices that have been seized that potentially

5  contain relevant material.  And while we are working to

6  investigate and review all of this and produce discovery

7  consistent with our constitutional and statutory obligations,

8  doing so takes time, and we would say that the ends of justice

9  served by tolling the time for the next 60 days outweigh the

10  best interests of the public and the defendants in a speedy

11  trial.

12       Prior to coming to court today, the government conferred

13  with counsel for Mr. Taylor, Mr. Warner, Mr. Kinnison, and

14  Mr. Mele, and we do not expect any objection from them on this

15  motion.

16       We are not certain of the positions of Mr. Hostetter and

17  Mr. Martinez.

18            THE COURT:  Mr. Martinez's counsel, Mr. Smith, do you

19  want to address that?

20            MR. SMITH:  Thank you, Judge.

21       Like the other defendants, we do not have an objection to a

22  continuance under the Speedy Trial Act.

23            THE COURT:  Okay.  Mr. Hostetter, do you want to

24  address that?

25            DEFENDANT HOSTETTER:  I object to any further

 1    continuance.  I'm ready for trial now, sir.

 2              THE COURT:  Okay.  Given there's a motion pending, so

 3    until that motion is resolved, we won't have a trial date set.

 4         As to any other issues any other defendant wants to raise

 5    today or anything else anyone else wants to raise today?

 6              MS. KENNEY:  Your Honor, I do have one issue, even

 7    though I'm only advisory counsel for Mr. Hostetter.

 8              THE COURT:  Sure.

 9              MS. KENNEY:  This is Karren Kenney.

10              THE COURT:  Go ahead.

11              MS. KENNEY:  Your Honor, there's been two productions

12    that the government has deemed are highly sensitive, and they're

13    refusing to acknowledge my client's pro se status, since he is

14    his own lawyer and they are refusing to provide that discovery

15    to him specifically.  So what they are doing is sending it to me

16    and directing me to go over it with Mr. Hostetter, even though

17    that's clearly outside of my obligations as an advisory counsel

18    only.

19         I would ask the government to acknowledge his pro se status

20    in all regards in regards to the discovery productions.

21              THE COURT:  I agree.  He needs to review the

22    discovery.  Go ahead.

23              MS. BERKOWER:  Your Honor, I think the connection cut

24    out when you first started responding to Ms. Kenney.  I do have

25    an answer, but I also want to make sure I'm responsive to Your

1    Honor's comment.

2           THE COURT:  You can go ahead first.  I was going to

3    say off the top, he's pro se.  So, you know, you have to deal

4    with him as any pro se defendant.

5           MS. BERKOWER:  Yes.  And Your Honor, we have been --

6           THE COURT:  If he doesn't want to agree to the

7    protective order, then he's treated like any other defendant.

8           MS. BERKOWER:  Yes, Your Honor.  I think Ms. Kenney

9    has -- we've been in correspondence with Ms. Kenney about this.

10   And the position of the government is that if he -- and I

11   have -- prior to coming to court, Ms. Nielsen and I did consult

12   with the Capitol breach discovery team, the team here at the

13   U.S. Attorney's Office that is managing the larger Capitol

14   breach discovery, including evidence.com and the Relativity

15   database, to understand our office's position on this issue.

16      And we were advised --

17         THE COURT:  The defendants, obviously, don't care

18   about that.  If they don't receive the discovery -- if they

19   don't sign the protective order, then they don't see it.

20         MS. BERKOWER:  Yes, Your Honor.  There's one

21   additional wrinkle here, which is it's our understanding that if

22   Ms. Kenney gets a license for evidence.com, she can provide

23   that -- she can share the contents of evidence.com with

24   Mr. Hostetter if he wants to see it.

25      But the reason we're doing that is standby counsel has to

take steps to prevent the defendant's ability to share or
download the footage that is highly sensitive, and there's some
precedence for having these additional hurdles so that highly
sensitive material has some protections on it when it is
provided to defense, regardless of whether the person is pro se
or not.  And there's some precedent for having standby counsel
serve that function with a pro se defendant.

     For Relativity, which is the other database we're using --

          THE COURT:  If she says she doesn't want to do that,
then she doesn't get it.  Simple.

          MS. BERKOWER:  Thank you, Your Honor.

          THE COURT:  Are you saying you don't want to do that,
Ms. Kenney?

          MS. KENNEY:  Your Honor, with all due respect, the
prosecutors -- I've told them twice when they've tried to send
me the highly sensitive discovery, and I told them, you're
refusing to acknowledge him as a pro se, because I do not get
reimbursed from CJA to go through any discovery.  That's way
outside the bounds of advisory counsel.  I am only here to
answer questions and give advice to Mr. Hostetter if he asks me
to.

     So he's already said he would comply with the protective
order, and they're just ignoring his pro se status.

     I don't know what precedence she's referring to, because
they're not responding to me every time that I call them out on

refusing to recognize his pro se status with these highly

sensitive productions.

THE COURT:  Do you want to explain, Ms. Berkower, what

it is I'm deciding?

MS. BERKOWER:  Well, I think, Your Honor, it's the

government's position that we're not going to provide

Mr. Hostetter with direct access to the Relativity database and

to evidence.com.  Our position is that if he wants access to

that, he can do so through his standby counsel.  And we believe

that we have authority to insist on that, given the nature of

what's in those databases.

And it's my understanding Ms. Kenney is objecting to that,

but --

DEFENDANT HOSTETTER:  Your Honor, may I say something?

It's Mr. Hostetter.

THE COURT:  Yes.

DEFENDANT HOSTETTER:  I'm listening to a lot of back

and forth between my advisory counsel and the government's

attorney.  It's much about nothing, in my opinion, Your Honor.

I, in all honesty, discontinued looking at the government's

discovery months ago when I realized that it was nothing more

than a strategy to delay, not only my speedy trial rights but

I've seen this reading coverage of just about every Capitol --

now they're calling it, I think, the siege.  I'm not sure.  It

was the Capitol attack, the Capitol insurrection.

1      They're going to finally get it all figured out, and when

2   they do, I hope they bring me to trial quickly.  I quit looking

3   at the government's discovery long ago.  I know exactly what I

4   did that day.  I know exactly what I did leading up to that day.

5   And I'm ready for trial, sir.

6          THE COURT:  Okay.  So none of this matters to you.  So

7   is there any order you want from me regarding discovery?

8          DEFENDANT HOSTETTER:  Oh, regarding -- well, if you're

9   able to make an order regarding the severance of myself from the

10  other defendants, that would be fantastic.

11     Is that what you're asking?  I might have misunderstood

12  you, sir.

13         THE COURT:  Is there some order you want from me

14  regarding discovery?

15         DEFENDANT HOSTETTER:  Oh, no.  Whatever speeds the

16  process up.  Like I said, I'm not even interested in looking at

17  any further discovery.  This is just a delay strategy by the

18  government.

19         THE COURT:  All right.  All of the defendants having

20  agreed to another 60 days and the Court finding it in the

21  interest of justice to do that --

22         MR. HUISH:  Your Honor, this is Dyke Huish.  As the

23  Court is looking at its calendar, I'm going to politely ask the

24  Court if it could look at Tuesday, the 31st, or Wednesday, the

25  1st, or the 2nd of June.  I leave on a promised vacation with my

1   wife, and while I'm afraid of this Court, I think I'm more

2   afraid of her.  So I'm hoping that we could set this on --

3               THE COURT:  As well you should be.

4               MR. HUISH:  I'm hoping we can set this on Wednesday,

5   June 1st, or Thursday, June 2nd.

6               MR. BAILEY:  Your Honor, my client has a conflict.

7   His son is graduating during that particular period of time

8   between the 31st and June 5th, and I would request any other

9   date than during that week on behalf of Mr. Mele.

10               THE COURT:  Any other date other than that week, you

11   said?

12               MR. BAILEY:  Other than that week.  So any time during

13   the week of the 23rd of May or the 27th would be acceptable to

14   accommodate Mr. Huish.

15               MS. WEST:  To make things easier, Your Honor -- this

16   is Kira West for Mr. Warner -- I am set for two different

17   January 6 trials in June.  So June is a bad month for me.  But

18   the week of the 23rd, I think, would be -- as prior counsel just

19   noted would be fine.

20               MR. COCIS:  Your Honor, I apologize.  I know Ms. West

21   mentioned the 23rd or the last week in June.  However, I am also

22   on a promised vacation between the 19th to the 23rd.

23        Again, this is Nick Cocis on behalf of Mr. Kinnison.

24               THE COURT:  How about the 26th?

25               MR. COCIS:  We're talking about June?  That falls on a

1    Sunday.

2             THE COURT:  I was talking about May.

3             MR. COCIS:  Oh, May.  I apologize.  The 26th of May

4    works.

5             MR. HUISH:  Thank you.  Yes, also, Dyke Huish and

6    Mr. Taylor, the 26th of May would be very kind.  Thank you,

7    everyone.

8             MR. SMITH:  Judge, this is Nick Smith on behalf of

9    Felipe Martinez.  I have a trial scheduled in one of these cases

10   beginning May 18.  It's supposed to be a six-week trial, but

11   that may be continued.  I'll find out on April 5th whether that

12   trial date will stick.

13            THE COURT:  Who is your judge?

14            MR. SMITH:  It's Judge Kelly.

15            THE COURT:  What's the name of your defendant?

16            MR. SMITH:  The defendant's name is Nordean, and the

17   case number is 21-cr-175.  That's Judge Kelly.  But Judge, if

18   the Court were inclined to set a status on that date, if it were

19   set around lunchtime, Your Honor, I think I could probably still

20   attend.

21            THE COURT:  Okay.  I think if I called him, he would

22   work around this.

23        Does 12:30 work for everyone?

24            MR. HUISH:  Yes, on behalf of Mr. Taylor.

25            MS. WEST:  Yes, Your Honor.

1          MR. COCIS:  That's not a problem, Your Honor.

2          MR. BAILEY:  Yes, Your Honor.

3          MS. BERKOWER:  That's fine for the government, Your

4    Honor.

5          THE COURT:  Okay.  Let's try for May 26th at 12:30,

6    then.

7          MR. HUISH:  When you say 12:30, you mean Eastern Time;

8    correct?

9          THE COURT:  Yes.  I will be in a trial there at that

10   time, but we'll do this during the lunch break in that trial.

11   So 12:30 Eastern.

12      So we'll continue the status and see if there are any

13   remaining important things, and we will try to set a further

14   motions schedule.  We will see if the government can wind down

15   discovery at that stage as well.

16      All right.  Other than Mr. Hostetter's pending motion, I

17   don't think I have any other pending motions at this time, and

18   we will see if we can set a schedule on his pending motion at

19   that time as well.

20          MS. WEST:  Your Honor --

21          THE COURT:  Yes.

22          MS. WEST:  Your Honor, may I be heard?  This is Kira

23   West on behalf of Erik Warner.

24      In the realm of discovery, I just want the Court to know my

25   experience.  It has been very, very difficult, and I think the

1    other defense lawyers are going to agree with me, to access

2    things on evidence.com and Relativity.  I tried to get things

3    off of USAfx only to find that the government had taken them

4    down, and specifically, I'm talking about global discovery 10.

5    My understanding is that it's supposed to be up for 90 days to

6    allow us to download it.  It was taken down before two months.

7         And I have to say that Ms. Nielsen, the other AUSA, was

8    very helpful to me in putting it back on.  But we spent hours --

9    you start to download it.  Then it stops, and you have to start

10   all over again.

11        So I just want the Court to be cognizant of how hard it is

12   for us to get discovery all of the time.  And I think I have

13   everything, but I wouldn't lay money on it.

14             THE COURT:  Explain that some more to me.  These are

15   things being put on the web?

16             MS. WEST:  Yes, sir, that's right.  And so I pitched a

17   fit, and Ms. Nielsen was very helpful.  She put it back on the

18   USAfx, because I don't have my Relativity credentials yet.  For

19   some reason, it's taking a very long time for me to get my

20   Relativity credentials.

21        And, I mean, you have to -- you're essentially taking an

22   old person like myself and making them learn a whole new digital

23   platform of how to get evidence.  That's okay.  I'm willing to

24   do that.  But it takes hours.  It's very difficult.

25        So the USAfx program that we've used for years in this

1    courthouse is disappearing in January 6 cases.  They're now not

2    going to put anything else on USAfx.  It's all going to be on

3    evidence.com and Relativity.

4        So I'm just trying to explain to the Court, we've had

5    difficulties.  It takes hours of our time to do it.  And so I

6    think that in the future I'm hopeful that the government will

7    help us get what we don't have is all I'm saying.

8              MR. SMITH:  Judge, this is Mr. Smith on behalf of

9    Mr. Martinez.  If anything, I believe Ms. West is under-

10   emphasizing the struggle for defense counsel to get access to

11   evidence in these cases.  One of the platforms Ms. West

12   mentioned, Relativity, Judge, I've never in my career of

13   handling litigation seen a discovery platform so difficult to

14   get access to.  There is a series of codes and multiple phone

15   applications one has to use every time to log into the system

16   just to get in.  Judge, it's like the president and the nuclear

17   codes or something.  It's even -- Judge, it's even the employees

18   at Deloitte, who are hosting this web server, laugh at how

19   difficult the government has made this process.  And it can take

20   30 minutes to an hour just to get into the thing.

21       I'm a little bit younger than Ms. West, it looks like, I

22   believe, but even I am befuddled by this system.

23             MS. WEST:  I don't think I look that bad for my age.

24             MS. BERKOWER:  May I briefly respond, Your Honor?

25             THE COURT:  Yes.

1        MS. BERKOWER:  Your Honor, just by way of brief

2   response, USAfx is a very useful file-sharing system, but it has

3   limited capacity to upload material.  There's a limited amount

4   you can put up there.  And knowing this restriction and the

5   volume of material in this case, the government has sought

6   another way to share evidence.  It is not a file storage system.

7   It doesn't have the space to store files for a long period of

8   time.

9        And so to the extent that material drops off of there,

10  first of all, we note that every time we provide discovery, but

11  also, it's just a file-sharing system.  It is not a file storage

12  system.

13       And given the amount of data here, the government has

14  contracted with Deloitte to make this Relativity database, and

15  access to the defense instance of that database is through the

16  Federal Public Defender's Office.  We did that on purpose so

17  that the government cannot be viewed as having access to the

18  things that the defense attorneys search for or request.  And

19  that instance of Relativity is being administered by FPD.  So to

20  the extent there's difficulty by defense counsel accessing the

21  database or getting their credentials, that is being

22  administered by FPD, not by us.

23       And we are sympathetic to any difficulty that the defense

24  is having.  I know Ms. Nielsen spent a lot of time working with

25  Ms. West today to ensure that she could get the material that

1    she was missing.  But it is a little bit out of our ability to

2    change how they are accessing it, because we set it up so that

3    there's a separate silo for defense access to that system so

4    that we can't be accused of tracking them or looking in on their

5    defense strategy.

6         So I just wanted to make clear why we are shifting away

7    from USAfx for this large volume of discovery, I know we still

8    use it in smaller cases, but also why any difficulties that the

9    defense is having accessing Relativity really is something that

10   I think they should be addressing at least in the first instance

11   with FPD, because we have taken our hands off of that.

12        In terms of the level of security, I just want to make

13   clear as well for the record that Relativity contains personal

14   identifiable information, thousands and thousands and thousands

15   of people at this point, as well as a lot of other sensitive

16   materials, including employment files, disciplinary documents,

17   and sensitive Capitol Police footage.

18        And that's why there is so much security and protection put

19   in place to access the database, because it is our

20   responsibility as the entity that has collected that information

21   to ensure that it's produced in a way that it cannot be misused

22   and that appropriate safeguards are taken of that personal

23   information.

24        Thank you, Your Honor.

25             THE COURT:  All right.  Ms. West, would you do me a

1    favor?  Mr. Kramer with the Federal Public Defender I know

2    thinks highly of you.  So would you call him and tell him about

3    the discussion you raised with me and the discussion we had and

4    tell him that I would like him to give me an update on whether

5    there's any steps he can take to help in this process.  I'm sure

6    he will give me a call after that and say what steps he can

7    take, if any, that would help in the process.

8              MS. WEST:  Yes, Your Honor.  I'd be happy to do that.

9        I just thought it was odd that the government put it up on

10   USAfx, it was supposed to be there for 90 days, and it

11   disappeared way before the 90 days was up.  So, you know --

12             THE COURT:  The platform is not big enough.

13             MS. WEST:  Well, it was for that.  This is global

14   production number 10.  This is a really important production for

15   defense lawyers because it contains, in my mind, a lot of *Brady*

16   evidence, a lot of video of police officers engaging in bad

17   conduct on January 6.  So it kind of raised a red flag with me

18   when it disappeared in an untimely fashion is all I'm saying.

19       I agree with Ms. Berkower.  She is absolutely correct about

20   it's not big enough to hold all the thousands of files, which is

21   why they've come up with this Relativity and evidence.com.  And

22   I think Mr. Smith and everyone else on this screen is going to

23   agree with me that it's just a really difficult program to work

24   with.

25       And I will talk to Mr. Kramer, and I'm sure that he will

```
1    get with you, Your Honor.

2              THE COURT:  Okay.  Anything else anyone else wants to

3    raise today?

4         Okay.  Thank you all very much, Counsel, and I will see you

5    all again on May 26 at 12:30.

6         (Proceedings adjourned at 2:06 p.m.)

7

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

9

10              CERTIFICATE OF OFFICIAL COURT REPORTER

11

12              I, Sara A. Wick, certify that the foregoing is a

13   correct transcript from the record of proceedings in the

14   above-entitled matter.

15

16              Please Note:  This hearing occurred during the

17   COVID-19 pandemic and is, therefore, subject to the

18   technological limitations of court reporting remotely.

19

20

21   /s/ Sara A. Wick                 June 26, 2023

22   SIGNATURE OF COURT REPORTER            DATE

23

24

25
```