```
                     BEFORE THE UNITED STATES DISTRICT COURT
                            FOR THE DISTRICT OF COLUMBIA


    UNITED STATES OF AMERICA,           .
                                        .
            Plaintiff,                  .   Case Number 21-cr-392
                                        .
        vs.                             .
                                        .
    ALAN HOSTETTER, RUSSELL TAYLOR,     .
    ERIK SCOTT WARNER,                  .
    FELIPE ANTONIO MARTINEZ,            .   May 26, 2022
    DERRICK KINNISON, RONALD MELE,      .   12:40 p.m.
                                        .
            Defendants.                 .
    - - - - - - - - - - - - - - - - -

                       TRANSCRIPT OF STATUS CONFERENCE
                    BEFORE THE HONORABLE ROYCE C. LAMBERTH
                          UNITED STATES DISTRICT JUDGE

    APPEARANCES:

    For the United States:         RISA BERKOWER, AUSA
                                   United States Attorney's Office
                                   601 D Street Northwest
                                   Washington, D.C. 20579


    For Defendant Hostetter:       ALAN HOSTETTER, PRO SE

                                   KARREN KENNEY, ESQ.
                                   Kenney Legal Defense
                                   2900 Bristol Street
                                   Suite C204
                                   Costa Mesa, California 92626

    For Defendant Taylor:          DYKE HUISH, ESQ.
                                   Law Office of Dyke Huish
                                   26161 Marguerite Parkway
                                   Suite B
                                   Mission Viejo, California 92692


                          -- continued --
```

```
 1    APPEARANCES (CONTINUED):

 2    For Defendant Warner:        KIRA WEST, ESQ.
                                   Law Office of Kira West
 3                                 712 H Street Northeast
                                   Unit 509
 4                                 Washington, D.C. 20002

 5    For Defendant Martinez:      NICHOLAS SMITH, ESQ.
                                   David B. Smith PLLC
 6                                 1123 Broadway
                                   Suite 909
 7                                 New York, New York 10010

 8    For Defendant Kinnison:      NICOLAI COCIS, ESQ.
                                   Law Office of Nicolai Cocis
 9                                 25026 Las Brisas Road
                                   Murrieta, California 92562
10
      For Defendant Mele:          STEVEN BAILEY, ESQ.
11                                 Bailey & Romero Law
                                   680 Placerville Drive
12                                 Suite A1
                                   Placerville, California 95667
13
14    Official Court Reporter:     SARA A. WICK, RPR, CRR
                                   333 Constitution Avenue Northwest
15                                 Room 4704-B
                                   Washington, D.C. 20001
16                                 202-354-3284

17
      Proceedings recorded by stenotype shorthand.
18    Transcript produced by computer-aided transcription.

19

20

21

22

23

24

25
```

1                        P R O C E E D I N G S
2          (All participants present via video conference.)
3              COURTROOM DEPUTY:  Your Honor, we are here today for a
4  criminal status hearing in 21-392, the United States of America
5  versus Alan Hostetter, Russell Taylor, Erik Warner, Felipe
6  Martinez, Derek Kinnison, and Ronald Mele.
7       Starting with counsel for the government, please identify
8  yourself for the record.
9              MS. BERKOWER:  Good afternoon, Your Honor.  Risa
10 Berkower for the government.
11             THE COURT:  Mr. Hostetter is appearing pro se.  Can
12 you hear me, Mr. Hostetter?
13             DEFENDANT HOSTETTER:  Yes, I am here and can hear you.
14             THE COURT:  Ms. Kenney is appearing as standby
15 counsel.  Can you hear me okay?
16             MS. KENNEY:  Yes, Your Honor.
17             THE COURT:  For Mr. Taylor?
18             MR. HUISH:  Dyke Huish on behalf of Mr. Taylor.  He's
19 sitting here with me right behind me.
20             THE COURT:  You can hear me okay, Mr. Taylor?
21             DEFENDANT TAYLOR:  Yes, sir.
22             THE COURT:  For Mr. Warner?
23             MS. WEST:  Good afternoon, Your Honor.  Kira West
24 appearing via video WebEx.
25             THE COURT:  Mr. Warner, you can hear me all right?

1                   DEFENDANT WARNER:  (Nodded head.)
2                   THE COURT:  Mr. Martinez?
3                   MR. SMITH:  Good afternoon, Your Honor.  Nick Smith
4      for Mr. Martinez.
5                   THE COURT:  And Mr. Martinez is -- oh, there he is.
6      You can hear me okay?
7                   DEFENDANT MARTINEZ:  Good afternoon, Your Honor.
8      Thank you.
9                   THE COURT:  And Mr. Kinnison?
10                  DEFENDANT KINNISON:  Yes, Your Honor.  I am here, and
11     I can hear you well, and my lawyer is on the line in his
12     vehicle.
13                  MR. COCIS:  Good morning, Your Honor.  Nick Cocis on
14     behalf of Mr. Kinnison.
15                  THE COURT:  Good afternoon.
16                  MR. COCIS:  I apologize.  It is afternoon there.
17                  MR. BAILEY:  Steven Bailey on behalf of Mr. Mele.
18        I do apologize to the Court for being so casually dressed
19     today.  I'm traveling, and I don't have a coat or a tie with me.
20                  THE COURT:  It's okay.  Where are you?
21                  MR. BAILEY:  Colorado.
22                  THE COURT:  Oh, too bad.  It's probably cold there;
23     right?
24                  MR. BAILEY:  Well, it's warm enough.
25                  THE COURT:  Okay.  Does the government want to give me

1    an update on the status?
2        I've seen Ms. West the last two days.  She's got a few of
3    these cases, probably more than some of you do.
4        But anyway, go ahead, Ms. Berkower.
5            MS. BERKOWER:  Good afternoon, Your Honor.
6        In the time since the last status conference, the
7    government has continued to provide discovery to the defendants.
8    We provided case-specific discovery, including the scoped
9    version of several electronic devices.  We've also provided more
10   rounds of discovery of the general Capitol breach discovery writ
11   large through the Relativity databases and through USAfx.
12       Most of the case-specific discovery has been provided at
13   this point.  There are still some items that we will be
14   producing, but we are pretty far along in that process.  And of
15   course, the Capitol breach discovery writ large is ongoing, and
16   we will continue to provide that as it becomes available.
17       We do anticipate providing plea offers in the coming weeks
18   to defendants who are interested in that.  And we've had some
19   correspondence this week concerning that.
20       And so based on that, we would request 30 additional days
21   for another -- to set another status conference so that we can
22   continue to work on both the discovery and potential plea
23   negotiations.
24       We would ask that for those reasons as well time be
25   excluded under the Speedy Trial Act during that period.

1          I can tell you that in the days prior to this hearing, I've
2     been in touch with counsel for several of the defendants.  I
3     don't want to speak for them, but it's my understanding based on
4     those conversations there's no objection to our request by
5     Mr. Kinnison, Mr. Warner, Mr. Taylor, and Mr. Mele, although I
6     do believe due to travel plans Mr. Mele and Mr. Warner may want
7     additional time.
8          It is my understanding Mr. Hostetter does not consent to
9     the request.  And despite several e-mails with counsel for
10    Mr. Martinez, I'm not clear on where he stands on the request.
11             THE COURT:  Okay.  I guess it's hard to -- since the
12    government hasn't made plea offers yet, it's hard to say that I
13    want to try to set a trial date yet until we see how many people
14    are in and out, because it's hard to assess how many days I need
15    to set for a trial date.
16         So I think something in the nature of 30 days or whatever
17    we could agree on to let them make offers and see who wants to
18    accept the offers.  It sounds like it makes sense to me as the
19    next step.
20         I would like to get a trial date set, but to set it, I need
21    to figure out how many days I need to set aside for trial.  I
22    have a number of cases that I'm going to need to set for trial,
23    but setting a trial date without figuring out how many
24    defendants I have and how many days to set aside is going to be
25    difficult, I think.

1        So that's sort of where I come from, but I will take each
2   defendant -- I know Mr. Hostetter wants a trial date as soon as
3   possible.  It seems to me that it's hard for me to set a date
4   for him right now until I see how many defendants we're going to
5   have and how long the trial might be, which I really couldn't
6   tell at this moment.  So I don't think I can set a trial date
7   today, but I think we're getting to the stage where maybe we can
8   start looking at dates at the next status.
9        Who wants to speak and thinks the status may be more than
10  30 days off?
11             MR. HUISH:  I will start off on behalf of Mr. Taylor.
12       I am traveling the entire month of June.  I almost feel
13  guilty saying it, but it is a long overdue and promised vacation
14  to my wife.  So it makes it a little difficult for me to resolve
15  this during that month.  But I'm hoping that we can return here
16  in about 45 or so.
17       I will just give my preference and say I would like to come
18  back around the 19th or 20th of July.  I know I'm pushing that,
19  but I'm not sure it will damage anybody if we go into the third
20  week of July more than necessary.  So I'm kind of asking that
21  the Court look at the week of the 18th for a date.
22       And I think that that might help us all to have enough time
23  to work through this, even to the 25th, but I know I'm pushing
24  it, but I'm going to put it out there and start with that as a
25  starter for everyone.

1            THE COURT:  All right.
2            MR. HUISH:  I will make whatever I need to work work,
3    but I don't think I can get you a good resolution if we come
4    back here on, say, the 30th of June.
5            THE COURT:  All right.
6            MR. HUISH:  Thank you.
7            THE COURT:  Do other defendants want to speak on that?
8            MR. BAILEY:  Yes, Your Honor.  Steven Bailey on behalf
9    of Mr. Mele.
10       I'm going to be traveling from the 27th of June to the 15th
11   of July.  So I am also in agreement with Mr. Huish that if we
12   can push it out to the 20th, even to the 25th, it will give us
13   an opportunity to come to some type of resolution on any type of
14   plea offers that are made, certainly by that date.
15           THE COURT:  Okay.
16           MS. WEST:  Your Honor, this is Kira West for Erik
17   Warner.
18       I agree also that we would need a little bit more time.  I
19   would push for the 19th or 20th or 21st.  I'm going to see the
20   Court on the 21st in another case.  I have a brief due in this
21   circuit on the 25th, so that would not be a great day for me.
22           THE COURT:  Okay.
23           MR. SMITH:  Judge, this is Nick Smith for defendant
24   Antonio Martinez.
25       We in principle don't have an objection to another speedy

1    trial continuance, but Judge, I think I would like to pick up on
2    the Court's thoughts from a few moments ago.
3         We've had quite a few status conferences in this case, and
4    we agreed to continuances because we hoped we would have good
5    faith negotiations with the government.  I think there have been
6    some developments here that the Court should be aware of that
7    suggest caution to me, Your Honor, about continuances and dates.
8         Judge, earlier this week, we received a letter from the
9    government of the kind I've never seen before in plea
10   bargaining, which said that, in no uncertain terms, although the
11   defendants have not received plea offers yet they will receive
12   them, and if they don't accept them, then what will likely
13   happen is the terrorism enhancement would be applied at
14   sentencing.
15        So, Your Honor, you know, the Court is aware that
16   prosecutors will sometimes suggest that a sentence could be
17   higher after trial than it would be through plea bargaining, but
18   there's always a premise that the government cannot threaten
19   something that it has no legal basis to threaten.
20        And so, Your Honor, the Court knows that the terrorism
21   enhancement is like the nuclear weapons of the sentencing
22   guidelines.  It moves the defendant's criminal history category
23   to the highest level, and it automatically bumps the offense
24   level to 32, no matter what the underlying guidelines are.
25        So, Your Honor, no court in this country has ever applied

1   the terrorism enhancement to the crimes that these defendants
2   are charged with.  And, Your Honor, I'm not going to brief this
3   issue for you right now, but basically, it's cut and dry under
4   statutory law that Congress and they directed the commission to
5   define federal crimes of terrorism and said that this
6   enhancement only -- quote, only applies to these crimes.
7       These crimes are not in the indictment here, Your Honor.
8   So when we're receiving what is really a threat in writing from
9   the government that if we don't accept sight unseen a plea offer
10  from the government, that the highest sentencing guideline would
11  apply to the defendants that no court has ever applied in these
12  circumstances, Judge, those are -- this is pushing something
13  that is outside of the bounds of normal plea bargaining, and
14  it's something for the Court to be aware of.
15              THE COURT:  Okay.
16              MS. BERKOWER:  Your Honor, may I respond?
17              THE COURT:  If you have to.
18              MS. BERKOWER:  I will be brief.
19      I just want to clarify for the record that I think
20  Mr. Smith is mischaracterizing the nature of the government's
21  letter, and I e-mailed with him twice about that.
22      The purpose of the letter, as I made clear to him in my
23  e-mail, is simply to notify the parties of the statutory maximum
24  penalties and the potential application of Application Note 4 of
25  that guideline provision, just putting it out there because it's

1     something that is not commonly used.
2         And so as we anticipate sending out plea offers, we just
3     wanted to have that clear for counsel to be able to understand
4     what we're offering and the potential maximum penalties under
5     the statutes and potentially the guidelines.
6         There was no threat there.  As I made clear to him, it's
7     not -- the potential application of that guideline is certainly
8     not contingent on him or his client accepting or rejecting a
9     plea offer and proceeding to trial.  And the government does
10    intend to engage in good faith negotiations with all of the
11    defendants who are interested in doing so here, and we
12    anticipate doing that prior to the next status conference.
13        Thank you.
14            MR. SMITH:  Your Honor, we will file the letter with
15    the Court.  We intended to after today's hearing.  And we will
16    show the language to the Court itself, which says that these are
17    guidelines that, quote, will be imposed on the defendants if
18    they go to trial, meaning if they do not accept the government's
19    plea offer, which has not been extended.
20        The Court is probably familiar with a case called
21    *Bordenkircher v. Hayes*, and if Your Honor would review this
22    decision, I know this Court has issued a decision on
23    vindictiveness in another case.
24        But this is not appropriate, Your Honor, and it's not plea
25    bargaining.  It's a threat that a terrorism enhancement that has

1   never been applied in this context would be applied if a plea
2   offer is not accepted, Your Honor.
3             MS. BERKOWER:  Your Honor, in response, the government
4   would file its e-mails to Mr. Smith clarifying this issue, and
5   to the extent there may have been some inartful wording in the
6   letter, the government has already made clear that this is not
7   intended as a threat.  It's simply as a notice of the potential
8   application.
9        I would also just note that while Mr. Smith is correct that
10  the terrorism enhancement doesn't apply to the enumerated list
11  of statutes, Application Note 4 in the guidelines explains other
12  circumstances in which an upward departure may be appropriate
13  but are not necessarily involving convictions on those
14  enumerated statutes.
15       And so part of why we sent the letter was to make clear
16  that in this instance, given the nature of the charges, that
17  application note could apply here.
18            MR. SMITH:  Two points.  One, Judge, she said that to
19  the extent Application Note 4 is construed in the manner, the
20  commission would have been exceeding its authority.  Another
21  court, the Sixth Circuit, held that even if Ms. Berkower's
22  reading were correct and the defendant doesn't have to be
23  formally convicted of a crime of terrorism, even in that case,
24  the Court would have to find by a preponderance that the crimes
25  still involved a crime of terrorism under Section 2332(b)(G).

1      Here, the government does not allege any crime of terrorism
2 under Section 2332(b)(G). It's not even in the facts of the
3 indictment, Your Honor. So this is a case that -- there is an
4 argument that has no precedent supporting the government's
5 position.
6           THE COURT: Ultimately, the guidelines under *Booker*
7 now are just advisory for me to look at it in sentencing anyway.
8 So I guess it's something we ought to think about and argue
9 about. But in the final analysis, I'm the one that decides the
10 sentence. I look at the guidelines. I have to make a
11 determination about the guidelines. But it ultimately rests
12 with me. The guidelines are advice to me, but ultimately,
13 they're just advice.
14     At one time, the law was I had to give a lot of reasons if
15 I were to depart. I don't have to do that anymore.
16           MR. SMITH: That's correct, Your Honor. But if a
17 defendant is being told he has to enter into a sentencing with
18 200 months on the range is -- that's quite a variance, Judge.
19           THE COURT: I understand; I understand.
20           MS. WEST: I think -- Kira West here, Your Honor.
21     I think that all these lawyers are from California, and
22 Mr. Smith is from New York. I'm, I think, the only one in D.C.
23 here, which they don't realize that the practice here has always
24 been here's your offer, if you don't take it we're going to
25 supersede the indictment and charge you with a whole bunch of

1    other stuff.  It happens all the time.
2        I right now am dealing with a January 6 defendant.  I said
3    I will plea to the most serious felony.  That wasn't good enough
4    to the government.  So I said I will plea to the entire
5    indictment.  That wasn't good enough to the government.  They
6    want to go back to the grand jury.  And I'm going to --
7            THE COURT:  And get a superseding.
8            MS. WEST:  They're treating -- this has nothing to do
9    with Ms. Berkower, but these cases, they're treating all these
10   defendants -- and this is a 23-year-old kid in the other case.
11   It's just crazy how they're going after these people.
12       And so I think it's really important for the Court to know,
13   as Mr. Smith said, these are -- this is a whole new landscape as
14   to how these cases are being prosecuted and how plea offers are
15   given and written.  And it's -- and I know the Court is well
16   aware of what's happening, but I have to second Mr. Smith's
17   caution to the Court.
18       But the last time I appeared before the Court, I pitched a
19   fit about the discovery issue.  I want the Court to know that
20   Ms. Berkower took a big chunk out of her day, got her agent on
21   the screen, explained how to do all the discovery to me, and I'm
22   good with the discovery.  And I just wanted the Court to know
23   that she did that for me.
24           THE COURT:  Good.
25           MR. HUISH:  Judge, I wanted to remain quiet, but the

1   best thing that ever happened to all of us is *Booker*.  I get it,
2   and I want the Court to know that I understand everybody, but
3   I'm still trusting in the wisdom of the Court.  And I guess I am
4   sucking up a little bit, but really, I'm not, because I
5   recognize this is where this is headed.  So I appreciate
6   everybody's arguments, but I also did not feel particularly
7   threatened.  I knew it was coming down to you one way or the
8   other.
9           So I appreciate the arguments --
10              THE COURT:  It's a heavier burden in these kinds of
11  cases.  I don't envy what I'm going to ultimately have to do
12  here.  But I have a jury to assist me, too.
13              MR. HUISH:  I'm confident we're going to work it out.
14  My California positive attitude.
15              THE COURT:  Good.  California can't be all bad.
16              MR. HUISH:  Some of us have to live here, Judge.  We
17  have to keep the place honest.  It's Reagan country for most of
18  us of the right age.
19              THE COURT:  That is true.
20      How about let's try for July 20th at 12:30?  Will that work
21  for everybody?
22              MS. BERKOWER:  Your Honor, that week is actually a
23  week that I am unavailable, and my co-counsel is also going to
24  be out of the country that week.  And so I know it's a few days
25  after the Court, the following week or the week before would be

```
 1    my preference.
 2              MR. HUISH:  Judge, can I suggest July 28th?  I think
 3    that might allow all of us real time to get this done.
 4              MR. BAILEY:  Your Honor, I would agree.  July 28th
 5    would be the best.
 6              THE COURT:  July 28th at 12:30 will work.  And in
 7    light of the pending motion from Mr. Hostetter, I actually don't
 8    even need a speedy trial waiver, but I will find it in the
 9    interest of justice anyway to waive speedy trial until July 28th
10    at 12:30.
11              MS. KENNEY:  Your Honor, I don't mean to interrupt the
12    Court.  I just wanted to let the Court know, I know I'm just
13    advisory counsel, but July 28th, my daughter starts college, and
14    I had to sign up for her family orientation for San Diego State.
15    So I can call in, but I will be on the San Diego State campus
16    that morning for family orientation, just so you know.
17              THE COURT:  Can you do it by calling in from the
18    campus there?
19              MS. KENNEY:  Yes.
20              THE COURT:  Let's keep it on the 28th since that will
21    work for everybody else.
22              MR. COCIS:  That's okay with us as well.
23              THE COURT:  We will do it July 28th at 12:30.  And
24    those who agree to a plea agreement, if there's going to be one,
25    I would like to know by then so I know who is in and out.  If I
```

1   know those who are likely to plea, those remaining, I can try to
2   set a schedule, try to figure out how many trial days we will
3   need, and see if we can get a trial set and get the motions set
4   so we can get a trial schedule too at that July 28th hearing
5   would be my top preference.
6       I know there may still be ongoing discovery, not
7   case-specific discovery but ongoing discovery, and whether we
8   could really do that by July 28th, we will just have to see.
9       What's your guess, Ms. Berkower, whether we can set a trial
10  date then?
11          MS. BERKOWER:  We will do everything on our end that
12  we can to make that realistic.  I will say that this case is so
13  big with so many defendants, we do expect discovery will be
14  ongoing through --
15          THE COURT:  Right.
16          MS. BERKOWER:  The biggest items have been given over,
17  and there will be some additional discovery.  I don't want to
18  misrepresent that there's no more case-specific discovery,
19  because that's not correct.  But we have produced a very large
20  volume of what the FBI has for the case files of these
21  individuals, and what's coming will be nowhere near the size of
22  what's already been given.
23          THE COURT:  I know Judge Mehta in the Oath Keepers
24  case expressed some concerns about the September date he has
25  set, as to whether the committee on the Hill goes forward with

1   public hearings, whether that may affect -- whether it will be
2   likely that we can get a fair jury trial going simultaneous with
3   those hearings on the Hill, and that could affect trial dates,
4   obviously.  We all know how much publicity those hearings on the
5   Hill get.  We don't want to have an inability to get a fair
6   jury.
7       We have been picking in individual cases some juries.  One
8   was picked yesterday in less than a day in an individual case
9   here, and the jury selection in these individual cases have been
10  going forward without great difficulty in finding jurors who
11  know something about it but think they can fairly and
12  impartially judge the case on the evidence and not have their
13  minds made up about whether this defendant did anything wrong.
14      And so obviously, these are going to be difficult jury
15  selection issues that we're going to have to deal with in
16  whatever trial goes forward here, but there may be some timing
17  problems still in getting a date set as the Hill persists in
18  wanting to have those public hearings at the time we may be
19  wanting to do trial here as well.  I just alert you to that.
20          MS. WEST:  I would not object to a January trial date
21  in San Antonio, Your Honor.  I think we would all love that.
22          THE COURT:  I wouldn't either, but I don't think
23  that's necessarily going to work.
24      Anybody else want to say anything?  I will give you a
25  chance, Mr. Hostetter, if you want to make any other comments.

1      You're muted still.
2              DEFENDANT HOSTETTER:  Thank you, Your Honor.
3        I am -- I continue my ongoing objection to any further
4  continuances, and I would also ask if you think there's any
5  possibility that my motions to dismiss and sever might be heard
6  before the July 28th hearing.
7              THE COURT:  I doubt it, but I will look at them before
8  the July 28th, because if I'm going to set a date, I've probably
9  got to decide the severance, at least look at it to know if it
10 may go anywhere.  I will look at it before July 28th.
11       Thank you very much, Counsel.  I will see you on July 28th.
12 Thank you all for your cooperation today.
13             (Proceedings adjourned at 1:06 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

    I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Sara A. Wick                    June 27, 2023
SIGNATURE OF COURT REPORTER          DATE