**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES, )<br>)<br>            Plaintiff, )<br>vs. )<br>)<br>)<br>DEREK KINNISON, )<br>)<br>            Defendant. )<br>_____) | Criminal Case: 21-CR-392 (RCL)<br><br>DEREK KINNISON'S<br>MOTIONS IN LIMINE |

PLEASE TAKE NOTICE that Defendant Derek Kinnison ("Mr. Kinnison"), through undersigned counsel, hereby respectfully submits to this Honorable Court his Motions in Limine in this matter.

**I.   MOTION IN LIMINE TO PRECLUDE GOVERNMENT'S USAGE OF CERTAIN WORDS AND PHRASES**

In accordance with Fed. R. Evid. 403, Mr. Kinnison respectfully requests that this Court prohibit the government and witnesses from using the following terms when referring to or describing Mr. Kinnison, his co-defendants, and/or the Three Percenter group during this trial:

- "anti-government;"
- "extremism;"
- "extremist;"
- "insurrection;"
- "insurrectionist;"
- "militia;"
- "mob;"
- "organized militia;"
- "racism;"
- "racist;"
- "riot;"
- "rioters;"
- "stack;"

1

Case 1:21-cr-00392-RCL   Document 294   Filed 08/14/23   Page 2 of 10

Rule 403 gives federal courts wide discretion to preclude the usage of certain unfairly prejudicial terminology at trial. *See, e.g., United States v. Asuncion*, 2017 WL 11530425, at *1 (E.D. Wash. Nov. 15, 2017); *United States v. Dimora*, 843 F. Supp. 2d 799, 847 (N.D. Ohio 2012); *United States v. Carr*, 2:13-cr-00250- JAD-VCF-3, 2016 U.S. Dist. LEXIS 64822 (D. Nev. May 16, 2016). In considering whether to preclude the usage of certain terminology, courts "look[] beyond the technical accuracy of a phrase and consider[] such factors as the 'threat of unfair prejudice, frequency of use, and alternative means of description.'" *United States v. Diaz*, No. 213CR00148JADGWF, 2014 WL 12708688, at *3 (D. Nev. Apr. 14, 2014) (quoting *United States v. Felton*, 417 F.3d 97,103 (1st Cir. 2005)).

Courts regularly prohibit the use of definitive terms that imply an inherent assumption of guilt, especially when this assumption is unrelated to the crimes being charged. *Dimora*, 843 F. Supp. 2d at 847; Diaz, 2014 WL 12708688, at *3-4. For instance, in Dimora, the court disallowed the government from referring to a defendant indicted on conspiracy charges as a "corrupt commissioner". *Dimora*, 843 F. Supp. 2d at 847. The court reasoned that this term was unnecessarily inflammatory as it suggested guilt without any reference to the crimes charged, and there were neutral alternative phrases available. *Id*. Similarly, in Diaz, the court prohibited the use of the term "organized crime" as it carried a clear stigma and implied racketeering activity, which was not relevant to the case. *Diaz*, 2014 WL 12708688, at *3-4.

Courts also consistently prohibit the use of loaded terms that could unduly provoke the jury. *Carr,* 2016 U.S. Dist. LEXIS 64822; *Asuncion*, 2017 WL 11530425, at *1. In *Carr*, the court disallowed the government from referring to a group of motorcycle riders charged with conspiracy to interfere with commerce as a "gang". *Carr*, 2016 U.S. Dist. LEXIS 64822. The court ruled that while the group's activities were relevant to the conspiracy charge, labeling them as a "gang" rather than a "club", "group", or "organization" did not make any fact more or less

2

likely. The term's probative value was therefore significantly outweighed by the risk of unfair prejudice *Id*. The probative value of the term therefore was substantially outweighed by the danger of unfair prejudice. *Id*. Similarly, in *Asuncion*, the court ruled that referring to the defendant as a "violent offender" in relation to the activities of a "Violent Offender Task Force" was irrelevant to the charge at hand and improperly suggested that the defendant was a violent offender. *Asuncion*, 2017 WL 11530425, at *1.

Permitting the government to employ terms such as "insurrectionist," "insurrection," "militia," and "organized militia" in this trial when referencing Mr. Kinnison, his co-defendants, or the Three Percenter group, would unjustly insinuate guilt for crimes not charged. Similar to the term "corrupt" deemed suggestive of guilt in *Dimora*, "insurrectionist" is a definitive label that implies guilt for insurrection, a crime not charged against Mr. Kinnison or the other defendants. This label is also laden with divisive implications due to the extensive negative media coverage of the events of January 6, where the term "insurrection" was frequently used.

The terms "militia" and "organized militia" carry an undeniable stigma, akin to the phrase "organized crime" in *Diaz*. These terms suggest a degree of formal militaristic behavior and are likely to evoke violent imagery in the jury's minds, which is not relevant to the charges and unnecessary when neutral terms such as "group" or "organization" are available. The government's use of the terms "extremist," and "extremism," would also result in unfair prejudice due to their irrelevance to the charges and their highly negative connotations.

As in *Asuncion*, where it was deemed more prejudicial than probative to label the defendant a "violent offender" unrelated to the charge, it would be prejudicial to categorize the defendants by offensive ideologies. These labels insinuate certain beliefs, none of which make any fact in this

case more or less likely, and several of which incite strong negative emotions in many Americans.

Moreover, the use of terms such as "stack," "mob," "riot," and "rioters" to describe the events at the U.S. Capitol will generate unnecessary prejudice. These terms, like "gang" in *Carr*, suggest violent group activities but add nothing probative. The government could use neutral terms like "line," "crowd," "group," "assembly," "protest," "protestors," or "demonstrators" to describe the activity at the Capitol without inciting prejudice.

Allowing the government and its witnesses to use these terms would only serve to inflame and confuse the jury, risking a conviction based not on Mr. Kinnison or the other defendants' actions, but on perceived divisive ideologies or potential future threats.

Accordingly, each of these terms should be excluded pursuant to Fed. R. Evid. 403.

### II.   MOTION IN LIMINE TO PRECLUDE GOVERNMENT'S USAGE OF VIDEO MONTAGE AND HOUSE & SENATE VIDEO COMPILATION

**A. Introduction**

In almost all of the trials conducted to date related to the events of January 6, including the bench trial of co-defendant, Mr. Hostetter, held in July, the government has presented two pieces of evidence. The first is a 22-minute video montage that captures surveillance footage of thousands of individuals on the Capitol Grounds and inside the Capitol building on January 6. This footage may be presented in its entirety or in broken-up segments. The second piece of evidence is a compilation video from the House and Senate, which shows the events unfolding inside the Senate and House Chambers during the Electoral Count, up until the point when members of Congress were evacuated.

Firstly, the 22-minute video montage, while it does highlight key breaches and violent activities that took place on January 6, does not involve Mr. Kinnison. To our knowledge, Mr.

Kinnison does not appear in either of these videos. Importantly, much of this footage depicts activities inside the Capitol building - a location Mr. Kinnison never entered. This compilation primarily shows the actions of other individuals linked to the events of January 6, and bears no relevance to the charges against Mr. Kinnison.

Secondly, the government has been presenting a House and Senate Compilation video, approximately 9 minutes in length. This video portrays the sequence of events that unfolded while the House and Senate were in session on January 6. It also captures the frightened expressions of Congress members as they heard rioters pounding on the exterior doors, leading to their evacuation.

Most of the events that transpired on January 6, are not disputed by either party. The point of contention lies in Mr. Kinnison's intentions amidst the unfolding chaos. Therefore, these overview videos, in our view, are more prejudicial than they are probative.

**B. Legal Standard**

As this Court knows, for evidence to be relevant, it must have the ability to make a fact more or less probable than it would be without that evidence. Additionally, the fact must be of consequence in determining the outcome of the action, as stipulated by Fed. R. Evid. 401. Non-relevant evidence is not admissible, according to Fed. R. Evid. 402.

Furthermore, evidence is barred if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading, as per Fed. R. Evid. 403. "Unfair prejudice" results when some potentially relevant evidence is designed to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997).

It is well established that a court should "weigh the probative value of evidence in light of appropriate evidentiary alternatives." *Id*. at 182-185; See also *Henderson v. George Washington University*, 449 F.3d 127, 137 (D.C.Cir. 2006) ("The prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact of other, non-prejudicial evidence").

**C.  The Government's Montage Exhibits Are Not Relevant**

The anticipated compilation videos from the government depict individuals other than Mr. Kinnison engaging in activities that Mr. Kinnison did not participate in. The videos do not make any fact more or less probable, and they do not determine any fact of consequence with regards to Mr. Kinnison specifically. The videos take the observer through the main breaches of that day at various parts of the building, areas that Mr. Kinnison never walked through.

Under the relevancy test of Rule 401, "there is no such thing as 'highly relevant' evidence or…'marginally relevant' evidence. Evidence is either relevant or it is not." *United States v. Foster,* 986 F.2d 541, 545 (D.C. Cir. 1993). The initial step "[t]o discover the relevancy of an offered item of evidence one must first discover to what proposition it is supposed to be relevant." *Id*. (citing *Probability and the Law*, 29 CAL. L. REV. 689, 696 n. 15 (1941)). With this guidance, the only proposition the videos prove is that people other than Mr. Kinnison violently broke into the Capitol Building on January 6. However, that fact does not make it more or less probable that Mr. Kinnison himself did those things because he is never featured in these videos. Notably, Mr. Kinnison does not dispute that (1) the joint session had to come to a halt, and that (2) members of Congress were evacuated. Therefore, there is no justifiable reason why the government needs to show all of the separate civil disorders that occurred as well as the specific details and images occurring when Congress was evacuated. These videos are just not relevant and should be excluded under Rule 402.

Lastly, courts have found this type of "background" information inadmissible when it is not relevant for any other purpose. In *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000), the government also tried to offer "background" testimony to give a complete picture of the events. However, the court explained that "no matter how important it is for the government to present a complete, morally compelling narrative, it must present that narrative through admissible evidence…." *Id*. at 86.

**D. Admission of these Compilation Videos Violates Rule 403 in Light of Appropriate Evidentiary Alternatives**

The video montages are not only unfairly prejudicial, but they will also undoubtedly confuse the issues and lead to cumulative evidence.

First, the admission of these videos would be highly prejudicial given their graphic nature. They focus on the violence that occurred that day, and the only purpose they serve is to inflame the jury's emotions by stirring up their feelings about the overall severity of what happened. Much of the violence portrayed in the videos is separate and apart from the accusations in this case. For example, one part of a video shows the violent Rotunda breach that resulted in many police officer injuries. This evidence has no probative value to prove what Mr. Kinnison was doing at a completely different location.

Second, the video montages are likely to confuse the issues in this case. They show a variety of different events that happened on the day of the riot, and it may be difficult for the jury to keep track of what is relevant to the charges against Mr. Kinnison. Additionally, the videos may be cumulative of other evidence that is already being presented in the case.

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the [fact-finder] or otherwise tends to affect adversely the [fact-finder]'s attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the

crime charged." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (citations and inner quotations marks omitted). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. 172 at 180.

Undoubtedly, the video montages the government wishes to introduce will invoke an emotional response and lure the factfinder into declaring guilty separate from Mr. Kinnison's actions that day, even if they do not believe that he was personally involved in the violence.

Most importantly, there are evidentiary alternatives available to the government that tips the balance in favor of excluding this prejudicial evidence. The *Old Chief* court set forth a methodology in balancing Rule 403 by explaining:

> The court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk. *Id*. at 182-183.

The government can simply introduce other video surveillance of just Mr. Kinnison's alleged actions and it has no need to introduce any evidence of other defendants or individuals. Admission of this narrowly tailored evidence will protect Mr. Kinnison's right to a fair trial, prevent confusion, and will prevent the presentation of cumulative evidence.

**III.  NOTICE OF MOTION TO JOIN IN MOTIONS IN LIMINE FILED BY CO-DEFENDANTS**

Mr. Kinnison hereby joins and adopts the factual and legal arguments raised by his co-defendants, incorporating by reference the arguments and case law cited in their motions. To the extent that the motions are fact-specific to those defendants, the legal analysis nonetheless applies to Mr. Kinnison.

1
2   Date:   August 14, 2023              Respectfully submitted,
3                                         DEFENDANT DEREK KINNISON
                                          By Counsel.
4
5                              BY:       s/Nicolai Cocis
                                         _____
6                                        Nicolai Cocis
                                         Law Office of Nicolai Cocis
7                                        25026 Las Brisas Rd.
                                         Murrieta, CA 92562
8                                        Tel: (951) 695-1400
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 14, 2023, a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all counsel and registered parties.

s/ Nicolai Cocis
_____
Law Offices of Nicolai Cocis
25026 Las Brisas Rd.
Murrieta, CA 92562
Telephone: (951) 695-1400