# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 21-CR-392-RCL** |
| | : | |
| **v.** | : | |
| | : | |
| **ERIK SCOTT WARNER,** | : | |
| **FELIPE ANTONIO "TONY"** | : | |
| **MARTINEZ,** | : | |
| **DEREK KINNISON, and** | : | |
| **RONALD MELE,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendants' motions *in limine*, *see* ECF Nos. 294, 299, 300, 301, 302, 303, 304, 308, 309, 311, 312.[1]

## LEGAL STANDARD

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible." *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993); Fed. R. Evid. 402. This is a "liberal" standard. *United*

---

[1] With limited exceptions, the defendants have joined one another's motions. *See* ECF No. 294 at 8 (Defendant Kinnison moving to adopt all codefendant motions *in limine*); ECF No. 299 (Defendant Mele moving to adopt all codefendant motions *in limine*); ECF No. 311 (Defendant Martinez moving to adopt certain codefendant motions *in limine* other than Defendant Warner's, which was filed later); ECF Nos. 305, 312, & 314 (Defendant Warner moving to adopt certain codefendant motions *in limine*, other than those in ECF Nos. 304 and 312). For ease of reference, the United States will refer to the primary author of the motion where there is one, though all arguments made apply to all defendants.

1

*States v. Moore*, 1:18-cr-198 (JEB), 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Rule 403 establishes a high barrier to justify the exclusion of evidence."  *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020).  It is not enough that the evidence is simply prejudicial; to be excluded, the prejudice must be "unfair," and the danger of that "unfair" prejudice must substantially outweigh the evidence's probative value.  *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'" (quoting *Dollar v. Long Mf'g*, 561 F.2d 613, 618 (5th Cir. 1977))); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of unfair *prejudice*, and gives the court discretion to exclude evidence only if that danger *substantially* outweighs the evidence's probative value." (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (cleaned up)).

## ARGUMENT

## I.     The Court Should Deny the Defendants' Motion To Sanitize Discussion of the January 6, 2021 Riot

Defendant Kinnison moves to preclude the United States and witnesses from using certain terms in describing Defendant Kinnison, his codefendants, or the Three Percenter militia during trial.  *See* ECF No. 294 at 1–4.  Among other words, Defendant Kinnison wants to sanitize the trial to avoid words such as "riot," "rioters," "insurrection," "militia," and "mob."  *Id.* at 1. Remarkably, Defendant Kinnison's motion is so expansive that it seeks to preclude not only government counsel from characterizing the evidence in this manner, but it also seeks to censor any *witnesses* called by the United States, if they wanted to use these words.  *See id.* at 1, 4.

2

Because these terms accurately describe the events on January 6, 2021, the Court should deny Defendant Kinnison's motion.

Defendant Kinnison seeks to sanitize—and thereby distort—witness testimony and the parties' advocacy with a citation to Rule 403.  Rule 403 provides that a "court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (D.D.C. 2012) (quoting Fed. R. Evid. 403, advisory committee's note).  But Rule 403 does not require the United States to bow to a defendant's preference and "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998).  By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society.  Accordingly, such charges arouse emotion.  There is nothing improper about that.  In fact, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so."  295 U.S. 78, 88 (1935).  "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)).  When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper.  *See Rude*, 88 F.3d at 1548 (finding the use of words like victim, deceit, outlandish,

gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the United States should not be required to sterilize its language and step gingerly around the defendant's crimes or his participation in what was clearly a concerted effort to accomplish illegal objectives. Judges across this district have faced similar motions and, in denying them, recognized that what took place on January 6, was, in fact, a riot involving rioters and an attack on the U.S. Capitol, the government of the United States, and American democracy. *See, e.g.*, *United States v. Carpenter*, 1:21-cr-205 (JEB), ECF No. 78 at 7–8 (denying a similar motion, "[w]hat occurred on January 6 was in fact a riot and an insurrection, and it did in fact involve a mob. The terms to which Defendant objects are thus accurate descriptors, not attempts to provoke or agitate the jury."); *United States v. Chwiesiuk*, 1:21-cr-536 (CKK) (denying a similar motion, "what occurred on January 6, 2021 was in fact an insurrection and involved insurrectionists and, therefore, the terms to which Defendants object are accurate descriptors"). After carefully considering the facts of other January 6 cases, many other judges in this district, including this Court, have used similar language to recognize the riot as just such an attack. *See, e.g.*, *United States v. Hostetter*, 1:21-cr-392-1 (RCL), ECF No. 275 at 4, 6 (referring to "the riot," "rioters," and "the mob"); *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building," and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings

of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors here need to use appropriate language—and not defense-friendly euphemisms—to describe the nature and gravity of the defendants' conduct.

In another January 6 case, *United States v. Vincent Gillespie*, Chief Judge Howell recently denied a defendant's motion *in limine* to exclude references to substantially similar terms under Fed. R. Evid. 403. Memorandum and Order, ECF No. 43, 1:22-cr-60 (BAH) (Nov. 30, 2022). The court found that the terms "insurrection," "attack," "riot," "mob," and "rioters" "accurately describe[d] the events that occurred on January 6, 2021." *Id.* at 5–6 (collecting other cases using these terms to describe the events of January 6). Chief Judge Howell declined to "muzzl[e] the government or its witnesses from employing commonly used phrases to describe the events on January 6, 2021," and held that "the mere use of these terms does not . . . signal prejudice substantially outweighing their probative value" under Fed. R. Evid. 403. *Id.* at 6–7. This Court should reach the same conclusion for the terms the defendant seeks to exclude.

Defendant Kinnison's effort to muzzle and censor witnesses—or at least those called by the United States—is even more troubling. As a practical matter, it is unclear how Defendant Kinnison anticipates this would be preemptively enforced. The United States does not put words in the mouths of its witnesses, nor do we attempt to sanitize their language for the benefit of any

party—prosecution or defense.  Rather than going down that road, witnesses should be free to testify to their firsthand observations using their own words, regardless of how unpleasant it is for the defendants.

The defendant asks the Court to prevent the United States from using language that accurately describes the events that took place at the Capitol on January 6.  He claims that these terms will focus "inflame and confuse the jury."  ECF No. 294 at 4.  He suggests that rather than calling the January 6 riot exactly that—a riot—that the "government could use neutral terms" such as "assembly."  But the defendants in this case did not attend an orderly "assembly"—a term that brings to mind a high school pep rally.  They participated in a riot.  Sometimes the truth hurts; but that is not a reason to sanitize and distort reality.  The motion should be denied.

## II.   The Court Should Deny the Defendants' Motion To Exclude Evidence Regarding the January 6, 2021 Riot

### A.   The Court Should Not Exclude a Video Montage Depicting the Riot at the U.S. Capitol Building and Grounds

Defendant Kinnison moves to exclude "a 22-minute video montage that captures surveillance footage of thousands of individuals on Capitol Grounds and inside the Capitol building on January 6." ECF No. 294 at 4.[2]  A video compilation of certain significant or indicative occurrences during the riot—hereinafter, the "Riot Montage"—is admissible and should not be excluded.  Rather, the Riot Montage should be admitted because it places the defendants' conduct in its appropriate context, and because the actions of other rioters are relevant to the charged

---

[2] As an initial matter, the United States understands Defendant Kinnison to be referring to a category of montage videos, rather than the one particular montage video he refers to.  In fact, the United States has introduced a number of different overview videos regarding the January 6 riot. For example, Defendant Kinnison's contention that the United States introduced a 22-minute montage in *United States v. Hostetter* is incorrect; in fact, the United States introduced a 6-minute overview video.

offenses and not unduly prejudicial.

Context matters.  To convict Defendant Kinnison and his coconspirators, the jury will be instructed that it must find that each defendant committed each offense with which he is specifically charged.  It is not enough for the United States to show that the defendants were simply present near others who committed crimes around the Capitol building and its grounds.  But Defendant Kinnison's motion ignores the nature of these crimes as a collective action.  It was the mob's collective action that disrupted Congress, and the defendants' knowledge of the collective riot bears on their *mens rea* for each of the charged offenses.  Defendant Kinnison's own motion inadvertently highlights the importance of the context of the riot in assessing the evidence in this case: "The point of contention lies in Mr. Kinnison's intentions *amidst the unfolding chaos*."  ECF No. 294 at 5 (emphasis added).

Defense counsel have filed similar motions in other cases, and those motions have rightly been rejected.  *See United States v. Carpenter*, 1:21-cr-205 (JEB), ECF No. 78 at 7 ("[T]he Court at this point cannot find the video—along with other overview evidence—inadmissible.").  As Judge Boasberg found in *United States v. Carpenter*, "the Government must be given leeway to place a defendant's actions into context and to assist the jury in 'organiz[ing] and evaluat[ing] evidence which is factually complex and fragmentally revealed.'  This category of evidence would permit the Government to do just that."  *Id.* at 6 (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)).

The United States does not anticipate focusing its evidentiary presentation on areas of the U.S. Capitol that Defendant Kinnison and his coconspirators did not go.  But to show the overall riot, its effects, the full context of the defendants' actions, and why the certification of the Electoral College vote was suspended, the United States will need to present evidence to show the actions

of other riots in other areas of the Capitol building and grounds. None of the rioters were authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them, the Representatives and Senators they were trying to protect, and to the U.S. Capitol itself. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing solely on specific individuals. But for the defendants' actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, 1:21-cr-54 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge the defendants based on their own actions, the context of the defendants' actions will necessarily be placed before the jury. That context was a riot.

Further, the actions of other rioters at multiple areas of the Capitol are relevant to elements of the crimes with which the defendants are charged. To prove Count One, Conspiracy To Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), and Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the United States must establish that there was an "official proceeding" and the fact that it was disrupted. The official proceeding was the certification of the Electoral College vote, and, as with other Counts, proving this charge requires presenting evidence involving the actions of other rioters at all locations of the Capitol building and grounds. Moreover, Count Two includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2, which necessarily underscores the relevance of the conduct of others. For Count Six, the United States must prove that the

defendants engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  To establish the disruption of government business, the conduct of other rioters is certainly relevant.

Even if this Court found that evidence of the actions of other rioters was prejudicial, a limiting instruction would be the appropriate remedy.  The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice.  *See, e.g.*, *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to the jury on the permissible and impermissible uses of the evidence); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (same); *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (stating that mitigating instructions to the jury enter into the Rule 403 balancing analysis).  A limiting instruction can be addressed at the end of trial, in the charge conference, and need not be resolved pretrial.

Because the actions of other rioters are relevant and not unduly prejudicial, and because any prejudice could be addressed through an appropriate limiting instruction, the Riot Montage, which depicts context of the riot the defendants participated in, and which depicts the actions of a mob that the defendants aided and abetted, is admissible evidence, and the motion should be denied.

    **B.**    **The Court Should Not Exclude a Video Montage Depicting the Proceedings in the U.S. Senate and U.S. House of Representatives**

Defendant Kinnison also moves to exclude "a compilation video from the House and Senate, which shows the events unfolding inside the Senate and House Chambers during the Electoral Count, up until the point when members of Congress were evacuated."  ECF No. 294 at

4.[3]  This video—hereinafter, the "Official Proceeding Montage"—is admissible and should not be excluded.

The Official Proceeding Montage has been developed using video from the House and Senate Recording Studios and documents from the Congressional Record.  *See* ECF No. 292 at 7–10 (United States motion *in limine* discussing admissibility).  It has been used in many previous trials, and will be used here, to supplement the testimony of a current or former Congressional official about the official proceeding being held before the joint session of Congress to count the Electoral College vote and how the riot impacted that official proceeding.  Evidence about the official proceeding, its disruption, and the actions of U.S. Capitol Police and police assisting them with respect to the rioters—including evidence presented through the Official Proceeding Montage—is relevant to the charges in at least three respects.

First, for Count One, 18 U.S.C. § 1512(k), the United States must prove that the defendants conspired to disrupt the official proceeding being held on January 6, and for Count Two, 18 U.S.C. §§ 1512(c)(2), 2, the United States must prove that the defendants disrupted the official proceeding, or aided and abetted its disruption.  The Official Proceeding Montage provides evidence of the official proceeding underway at the Capitol during the riot and evidence of how the riot disrupted the official proceeding.

Second, for Count Six, the United States must prove that the defendants engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  The Official Proceeding Montage shows how and when the rioters disrupted the

---

[3] The Official Proceeding Montage continues past the moments of evacuation and depicts the moments when the official proceeding was resumed and concluded.

official proceedings in the Capitol by showing, among other things, moments where the official proceeding is interrupted by the illegal breaches by rioters into the U.S. Capitol building and dangerous conduct by rioters on Capitol grounds, all of which posed a threat to those inside the Capitol building.  This evidence will complement other evidence, specific to the defendants, that will show their individual actions in contributing to the mob that disrupted Congress.

Third, for Counts Five and Six, the United States must prove the defendants knowingly engaged in certain conduct in a restricted area.[4]  The Official Proceeding Montage establishes that the defendants' conduct occurred in a restricted area by, among other things, showing the presence of Secret Service protectee Vice President Mike Pence in the Capitol during the official proceeding.

Defendant Kinnison claims that "[m]ost the events that transpired on January 6, are not disputed by either party."  ECF No. 294 at 5; *see also id.* at 6 ("Mr. Kinnison does not dispute that (1) the joint session had come to a halt, and that (2) members of Congress were evacuated.").  As an initial matter, the parties have not resolved any stipulations at this point, so the extent of agreement or disagreement amongst all parties is not yet known.  However, even if the defendants were willing to stipulate to the substantive content of the Official Proceeding Montage, the defendants do not get to dictate how the United States proves its case to the jury.

Because the Official Proceeding Montage is relevant to the charges against the defendants and is not unfairly prejudicial, and because defendants do not get to dictate how the United States will prove its case at trial, Defendant Kinnison's motion should be denied.

---

[4] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area.  The proof in this case will establish that the defendants were "in" the restricted area, not merely in close proximity to it.

**C.      The Court Should Not Exclude All Videos in Which Defendants Are Not Identified**

Defendant Mele moves to "prohibit[] the government from using any and all videos in which the defendant is not identified as being in the video."  ECF No. 300 at 1.[5]  Similarly, Defendant Warner moves to exclude "all evidence concerning conduct and statements of others who may have been in Mr. Warner's general vicinity on January 6."  ECF No. 309 at 1.  The defendants' motions are sweeping and would exclude relevant evidence, and, thus, should be denied.

As a general matter, the United States agrees that the defendants are not liable for the conduct of people around them, beyond their coconspirators and those whose conduct they aided and abetted, on January 6, 2021.  However, the conduct of people who were near them in the Capitol building or on Capitol grounds is relevant to explain how the defendants' conduct was disorderly and disruptive.  It is also relevant to prove the defendants' knowledge, motive, and *mens rea*.  Thus, these motions should be denied to the extent they would exclude evidence probative of, among other things, the context in which the defendants acted; the defendants' knowledge and state of mind; and the impact of the defendants' actions in contributing to the mob that disrupted the official proceeding.[6]  Indeed, this Court denied a substantially similar motion *in limine* filed

---

[5] Defendant Mele identified six videos "the government has stated that it plans to use at trial, in which the defendant is not identifiable." *Id.*  The six videos the defendant identifies feature certain defendants on the nights of January 4 or 5 in Washington, D.C.  That evidence in particular is discussed in Section V, below.  However, the relief sought by Defendant Mele in this motion is broader, as it seeks to exclude "any and all videos" not featuring the defendant.  ECF No. 300 at 1.

[6] To the extent that certain evidence shows the conduct of defendants other than the movant defendant(s), the United States must be allowed to introduce that evidence at trial to prosecute its cases against those defendants.  But such evidence will not just be relevant to the defendants depicted; evidence of any defendant's actions in furtherance of the conspiracy is relevant to the conspiracy and aiding and abetting charges against all defendants.

by the defendant in *United States v. Leo Kelly*.  *See* Minute Entry (04/25/2023), *United States v. Leo Kelly*, 1:21-cr-708 (RCL) (denying defendant's motion *in limine* to exclude acts of others).

As discussed further above in Section II.A, the conduct of others is relevant to the charged offenses against these defendants.  The nature of the defendants' crimes arises from collective action.  They knowingly joined a mob, and it was the mob's collective action that disrupted Congress.  Moreover, the United States needs to prove the defendants' knowledge and intent, which puts the behavior of other, nearby rioters at issue.  Further, in this case, to prove that the defendants' conduct was disorderly and disruptive, and that their conduct in fact impeded or disrupted Congress, the United States will present testimony that the Capitol building and the restricted area on Capitol grounds were closed to the public on January 6, 2021.  No member of the mob was authorized to be within the restricted area, no member of the mob submitted to security checks, and the U.S. Capitol Police assessed every member of the mob to be an active threat.  Given a variety of factors, including the size of the crowd in the restricted area, Congress was forced into recess and the peaceful transfer of power was interrupted.  Congress could not resume its business until the entire mob was cleared.

These defendants were not bystanders.  Defendants Martinez, Kinnison, and Mele joined a mob pursuing law enforcement fleeing from rioters and ascended stairs—stairs they knew law enforcement had been protecting from rioters—to the Upper West Terrace.  Defendant Warner ascended those same stairs before breaking into the Capitol building through a broken window.  Their conduct was disruptive individually and as part of the collective riot of January 6.  While the conduct of the defendants personally will be the focus of the case, proof of this disruptive conduct could appropriately be made through evidence of the conduct of other rioters as well.  After all, had the defendants been acting alone, they would have been quickly arrested long before they

made it to the Upper West Terrace or through the Senate Wing Door.

As Judge Kollar-Kotelly explained in another January 6 case:

> The following metaphor is helpful in expressing what the statute [18 U.S.C. § 1752(a)(2)] does require. Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. Because Rivera's presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that Rivera in fact impeded or disrupted the orderly conduct of Government business and official functions.

*United States v. Jesus D. Rivera*, Case No. 1:21-cr-60 (CKK), ECF No. 62 at 13. Facing a jury of their peers, the defendants may want to walk away from the mob at trial; but that's not what they did on January 6. The defendants accomplished their crimes on January 6 because of the mob, and the mob was effective because of rioters like the defendants. They cannot be separated.

Where other rioters near the defendants did something that the defendants could have observed or learned of, those rioters' conduct is probative of the defendants' knowledge, *mens rea*, intent, and motive. It is neither novel nor controversial to see other people's behavior as probative of the defendants' state of mind. To be sure, the defendants may argue at trial—if the evidence supports it—that they failed to see, hear, or understand what was happening around them. But the United States should not be precluded from undertaking to show otherwise through evidence of events happening around the defendants.

Because evidence of the actions of the mob is needed for the jury to receive a complete picture of what took place at the Capitol on January 6, and because the relevance of this evidence is not substantially outweighed by any unfair prejudice to the defendants, the defendants' motions should be denied.

### D.    The Court Should Not Exclude All Videos of Rioters Entering the U.S. Capitol Building

Defendant Mele moves for a "limiting instruction[] regarding certain evidence of people entering the Capitol building on January 6, limiting the jury from considering that evidence against the defendant."  ECF No. 302 at 1.  Elsewhere, Defendant Mele moves to exclude evidence of others entering the U.S. Capitol building.  *See* ECF No. 304 at 2.  The requested limiting instruction is premature and should be denied.  Further, because the conduct of others—including those entering the Capitol building—is relevant, any motion to exclude such evidence should be denied.

As an initial matter, as set forth above in Sections II.A–C, the actions of rioters breaching the Capitol building are probative of, among other things, the fact that the mob that the defendants joined, aided, abetted, and did in fact disrupt the official proceeding.  Defendant Mele's request to exclude evidence or for a limiting instruction should be denied on that basis alone.

Moreover, Defendant Mele's motion ignores the fact that his codefendant and coconspirator—Defendant Warner—broke into the Capitol building on January 6.  Defendant Warner's breach of the Capitol building is specifically alleged as an act in furtherance of the conspiracy among the defendants to obstruct the official proceeding.  ECF No. 210 at ¶ 64.  The act of a conspirator in furtherance of the conspiracy is probative of the conspiracy against all coconspirators.  *See, e.g.*, *Bahlul v. United States*, 840 F.3d 757, 802 (D.C. Cir. 2016) (stating that "ordinary conspiracy jury instructions say that the acts of co-conspirators can be considered proof of the conspiracy charge against the defendant.") (J. Wilkins, concurring).  Thus, Defendant Warner's breach of the Capitol building is probative of, among other things, his codefendants' guilt on Count One, and no limiting instruction is warranted.

Defendant Mele also argues that evidence of others entering the Capitol constitutes Rule 404(b) character evidence and should be excluded.  *See* ECF No. 302 at 2 ("The government is

trying to show that others engaged in bad conduct and are therefore bad people so therefore defendant must be a bad person as well and therefore guilty."); *see also* ECF No. 304 at 2.  But of course it isn't.  The evidence is not extrinsic to the crime charged, would not go to any character trait, nor would it be offered to show any action in conformity therewith.[7]

Because evidence of the actions of the mob, including Defendant Warner's conduct in breaking into the Capitol building, is relevant and intrinsic to the crime, and because the relevance of this evidence is not substantially outweighed by any unfair prejudice to the defendants, Defendant Mele's motions should be denied.

## III.    The Court Should Deny the Defendants' Motion To Exclude Evidence of the Restricted Area

### A.    The Court Should Not Exclude Evidence of the Closure of the U.S. Capitol Grounds

Defendant Mele moves to exclude "any government evidence that the Capitol grounds were not open to the public at the time the defendant entered the grounds."  ECF No. 303 at 1. Because the motion seeks to preclude the United States from proving an element of crimes charged, the motion should be denied.

Proving that Defendant Mele and his codefendants entered and remained in a "posted, cordoned off, or otherwise restricted area" is central the government's burden of proof with respect to Counts Five and Six.  *See* 18 U.S.C. § 1752(a)(1) ("knowingly enters or remains *in any restricted building or grounds* without lawful authority to do so" (emphasis added)); 18 U.S.C. § 1752(a)(2) ("knowingly, and with intent to impede or disrupt the orderly conduct of Government business or

---

[7] Defendant Mele's other motions *in limine* repeatedly invoke Rule 404(b), *see* ECF Nos. 299, 301, 304, often with almost identical language, and always with the exact same fundamental flaw: the evidence is not extrinsic, it is not offered to prove a character trait, and is not offered to show action in conformity therewith.

official functions, engages in disorderly or disruptive conduct *in, or within such proximity to, any restricted building or grounds* when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions" (emphasis added)).

Defendant Mele confuses a motion *in limine* with legitimate arguments about how a jury should consider evidence at trial.  Defendant Mele claims "the government's own evidence will show that by the time defendant arrived, any bicycle racks and or signs were long gone and there was nothing left to indicate to a reasonable person of the general public that the grounds were closed."  ECF No. 303 at 2.  Defendant Mele's characterization of the government's evidence is inaccurate; regardless, he is free to make that argument to the jury.  Defendant Mele has not provided any basis, however, to exclude *in limine* otherwise admissible evidence of the numerous indicia—such as bike rack fencing, police lines, gas, and pepper spray—that an area of the Capitol grounds where Defendant Mele entered on January 6 was indeed closed.  There is no basis to exclude evidence of a crime just because the defendant proclaims his innocence.  That's what trial is for.

Because the closure of Capitol grounds is essential to charges against the defendants, and because the defendant has made no argument to the contrary, Defendant Mele's motion should be denied.

### B.     The Court Should Not Exclude a Map Depicting the Restricted Area on January 6, 2021

Defendant Warner moves to exclude "a redlined map" that depicts the restricted perimeter in place on January 6, 2021.  ECF No. 309 at 1; *see also* ECF No. 310 (Defendant Mele's similar motion).  The map Defendant Warner complains of has been proven authentic in a number of January 6 trials.  The Court should deny the motion and resolve any authenticity objection at trial.

Rule 901(a) resolves Defendant Warner's motion.  Defendant Warner contends that, to

move the map into evidence at trial, the United States has to show "when and how it was created."[8] At bottom, Defendant Warner contends that a witness cannot authenticate a map if the witness did not create the map. *Id.* at 6–7. But the rule of authentication provides otherwise. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In many previous trials, including the trial in this Court of Defendant Warner's codefendant, Alan Hostetter, the United States authenticated a map of the restricted perimeter through the testimony of a U.S. Secret Service or U.S. Capitol Police witness. These witnesses have testified, based on their first-hand knowledge of the security perimeter established on January 6, that the exhibit is what it purports to be: a map of the Capitol grounds containing a red line marking the location of the restricted perimeter. That is all the rule of authentication requires. The United States intends to proceed accordingly here as well.

Unsurprisingly, Defendant Warner does not cite a single case to support his position. Nevertheless, Defendant Warner contends that this testimony is insufficient to establish the map's reliability. ECF No. 309 at 6. Yet Defendant Warner, who has access to extensive video evidence showing the Capitol grounds on January 6, has not provided a scintilla of evidence to show that the restricted perimeter map is unreliable. Nor has any previous trial defendant meaningfully called into question the reliability of the map through cross-examination of government witnesses on this issue. Simply put, the restricted perimeter map has been repeatedly proven to be reliable and admissible.[9]

---

[8] Defendant Warner's motion includes the allegation that "[t]he government has woodshedded their witnesses so hard that the witnesses themselves don't even know what [sic] the truth." ECF No. 309 at 7. The United States rejects any allegation by Defendant Warner that the United States is encouraging witnesses to testify to anything but the truth.

[9] The version of the restricted perimeter map currently used by the United States is slightly

Defendant Warner also contends that the fact the map was created after, rather than before, January 6 could confuse the jury. *Id.* at 7. The relevance of the map, however, is not how or when it was created, but what it shows. Here, the map shows the restricted area that was in place on January 6—the restricted area that the defendants violated.

Because Defendant Warner thus has not provided any basis to exclude the map *in limine*, the motion should be denied.

## IV. The Court Should Deny the Defendants' Motions To Exclude Evidence of Their Discussing, Transporting, and Carrying Weapons Before and on January 6, 2021

Defendant Mele moves to "[e]xclude any reference or evidence of possession of a firearm in Washington D.C." ECF No. 299 at 1. Mele contends this evidence should be excluded pursuant to Rules 403 and 404(b). *Id.* at 1–2. In a separate motion, Defendant Mele moves to exclude "statements claiming defendant possessed dangerous or deadly weapons on January 6." ECF No. 304 at 1.[10] Defendant Warner separately moves to preclude "[a]ny reference to Mr. Warner's knowledge of guns brought on the trip" and "[a]ny mention of body armor or plates." ECF No. 312 at ¶¶ 5, 8.

The defendants' communications about weapons, their transportation of weapons, and their carrying of weapons in Washington, D.C. before and on January 6, 2021, however, are all relevant and intrinsic to the charged conspiracy, as set forth in the Second Superseding Indictment, and as the United States will show at trial. This evidence is also admissible pursuant to Rule 404(b)

---

different than a predecessor version of the map used in earlier trials. The slight differences to the depiction of the restricted perimeter are irrelevant to the charges against Defendant Warner, who broke into the Capitol building by climbing through a broken window.

[10] Defendant Mele's argument in this motion is directed at excluding evidence that other individuals entered the U.S. Capitol building on January 6, 2021. *Compare* ECF No. 304 *with* ECF No. 302. Beyond the "Introduction," the motion does not discuss possession of dangerous or deadly weapons.

19

because it proves the defendants' preparation, motive, intent, knowledge, and absence of mistake. The evidence's probative value is also not substantially outweighed by unfair prejudice. Accordingly, the Court should deny the motion.

### A. The Defendants' Transportation and Carrying of Weapons Are Intrinsic to the Charged Conspiracy

The Second Superseding Indictment includes the following allegations related to the defendants' transportation and carrying of weapons during and in relation to the charged conspiracy:

- Defendant Mele rented a large vehicle for the road trip to Washington, D.C. because, he stated, he "need[ed] room for the gear."  ECF No. 210 at ¶ 29.

- The defendants all participated in an encrypted Telegram group, the DC Brigade group, that was established for "able bodied individuals that are going to DC on Jan 6 . . . [and who] are all ready and willing to fight."  *Id.* at ¶¶ 39, 42.

- On January 1, 2021, the creator of the DC Brigade group—coconspirator Russell Taylor—wrote to the group, "I am assuming that you have some type of weaponry that you are bringing with you and plates as well."  *Id.* at ¶ 40.

- On January 1, 2021, Defendant Kinnison posted to the DC Brigade group that he and the group were driving instead of flying because "[our] luggage would be too heavy. We will have lots of gear from medical kits, radios, multiple cans of bear spray, knives, flags, plates[,] goggles, helmets."  *Id.* at ¶ 44.

- On January 2, 2021, Taylor made a post on the DC Brigade group that linked the conspirators' plan to carry weapons to Washington, D.C. with their plan to obstruct the official proceeding on January 6.  Describing what weapons could be carried in Washington, D.C., Taylor suggested a "[h]atchet," "[b]at," or "[l]arge metal flashlight" and then stated: "I believe that you can carry most fixed blades just not into the government buildings.  Something tells me though if we are inside government buildings it won't be on the top of our list."  *Id.* at ¶ 46.

- On January 2, 2021, Defendant Kinnison wrote a text message to Defendants Mele, Warner, and Martinez asking if they were sure they wanted to bring a "shotty" and "another long iron" in the vehicle that Defendant Mele rented.  Defendant Mele responded to the group, "Shorter the better.  Mine will be able to be stashed under the seat.  I'll bring it.  18" barrel."  *Id.* at ¶ 51.

- On January 2, 2021, Defendant Kinnison sent a text message to Defendants Mele, Warner, and Martinez, "Got the bandolier."  Defendant Kinnison attached a "selfie" photograph that showed him wearing a bandolier of shotgun ammunition around his

body.  *Id.* at ¶ 52.

- On January 6, 2021, Defendants Mele and Martinez, both wearing plate-carrier vests, congregated on the National Mall with Defendants Warner, Kinnison, and others.  *Id.* at ¶ 62.

- Defendant Martinez, wearing a plate-carrier vest, and Defendant Kinnison, wearing a gas mask, joined other rioters on the Upper West Terrace of the Capitol building in the restricted area.  *Id.* at ¶ 67.

Although not alleged in the Second Superseding Indictment, additional conduct integral to the conspiracy—as the United States will show at trial through testimony, electronic communications, videos, photos, and other evidence produced in discovery—includes the following:

- Defendant Mele communicated with persons outside the conspiracy to obtain ammunition before traveling from California to Washington, D.C.

- Defendant Mele appears to have been carrying pepper spray or bear spray while trespassing on Capitol grounds, as shown below.



- Defendant Warner appears to have been carrying bear spray while he stormed the Capitol, as described further in Section VIII, and as shown below.



- Photographs found during a search of Defendant Mele's phone showed multiple firearms and ammunition inside the hotel room used by the four defendants in Washington, D.C., as shown below.





At trial, the United States intends to introduce testimony, electronic communications, videos, records, and other evidence related to weapons discussed, transported, or carried by the defendants (collectively, the "weapons evidence"), which will broadly fall into the following categories:

- The defendants' preparations and communications among themselves and with others about weapons, which occurred in the time period near to and during the period of the charged conspiracy—December 19, 2020 through January 6, 2021.

- The defendants' transportation of weapons from California to Washington, D.C. and their storage of weapons in Washington, D.C.

- The defendants' carrying of weapons in Washington, D.C. before and on January 6, 2021.

- The defendants' ownership of firearms, to the extent necessary to prove the ownership of particular firearms transported to Washington, D.C. by the defendants.

- The seizure of weapons and related items from the defendants' residences to the extent the weapons seized relate to weapons transported to Washington, D.C. by the defendants.

Defendant Mele contends that this evidence constitutes impermissible "bad acts" extrinsic to the charged crime and inadmissible under Rule 404(b). But this is not a case in which the

defendants seek to exclude evidence of their possession or use of weapons unrelated to the charged crimes. Rather, as set forth above, the defendants specifically discussed weapons among themselves when planning their travel from California to Washington, D.C.; they chose to drive cross-country rather than fly to facilitate transporting weapons; they coordinated their actions with others in the DC Brigade Telegram group who were "ready and willing to fight" and who also planned to bring weapons; they brought some weapons into their hotel room in Washington, D.C.; and they carried other weapons while trespassing into the U.S. Capitol building and on Capitol grounds. The weapons evidence thus squarely falls within the rubric of intrinsic evidence as established by the D.C. Circuit.

Intrinsic evidence encompasses evidence that is either "of an act that is part of the charged offense" or is of "acts performed contemporaneously with the charged crimes . . . if they facilitate the commission of the charged crime." *United States v. Bowie*, 232 F.3d at 923, 929 (D.C. Cir. 2000). When evidence of such acts is intrinsic to the charged crime, it is not evidence of other acts and is thus wholly unregulated by Rule 404(b). *See United States v. Alexander*, 331 F.3d 116, 124–27 (D.C. Cir. 2003). "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache."); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("The Rule does not bar 'evidence . . . of an act that is part of the charged offense,'"); *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) ("No [404(b)] notice is required, however, for evidence of an 'intrinsic act,' that is, an act that is 'part of the crime charged.'"); *United States v. Gartmon*, 146

F.3d 1015, 1020 (D.C. Cir. 1998) (holding that evidence that a defendant charged with fraud had threatened a co-conspirator was not "other crime evidence" but instead was "inextricably intertwined" with the charged offense); *United States v. Garces*, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence); *Bowie*, 232 F.3d at 929 ("[U]ncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.").

"A threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes." *United States v. Machado-Erazo*, 901 F.3d 326, 333 (D.C. Cir. 2018). Here, the weapons evidence is intertwined with the commission of the charged crimes, including, among other offenses, Conspiracy To Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). To prove the conspiracy offense, the United States must prove that the defendants agreed with at least other person with the goal of committing the crime of corruptly obstructing or impeding an official proceeding. Likewise, for the substantive obstruction offense, aiding and abetting would include conduct in furtherance of the conspiracy. To prove the disorderly and disruptive conduct offense, the United States must prove that the defendants engaged in disorderly and disruptive conduct in proximity to a restricted building or grounds with the intent to impede or disrupt the orderly conduct of governmental business or official function and that their conduct did in fact impede or disrupt such business or function. *See* 18 U.S.C. § 1752(a)(2).

For these offenses, the United States must prove that the defendants intended to obstruct, impede, interfere, or disrupt.  The evidence of the defendants communicating about weapons, transporting weapons, and storing and carrying weapons in the weeks and days before January 6, and on January 6 itself, clearly makes the defendants' intent to obstruct, impede, interfere, or disrupt—a consequential fact in the outcome of this case—"more probable than it would be without the evidence." Fed. R. Evid. 401; *see United States v. Huff*, 3:10-cr-73, 2011 WL 4916195, at *4 (E.D. Tenn. Oct. 17, 2011) (finding defendant's possession of ammunition seized at the time of his arrest was admissible because it was "probative of the defendant's intent and was seized from the defendant in close temporal proximity to the offenses").

With respect to the defendants' firearms and ammunition in particular, while the United States currently does not expect to introduce evidence that any of the defendants carried a firearm while on Capitol grounds, the defendants discussed these weapons, transported these weapons, and kept these weapons at the hotel, throughout their preparations for the anticipated events of January 6.  This evidence is thus admissible as intrinsic evidence because it "arose out of the same transaction or series of transactions as the charged offense," and it is "necessary to complete the story of the crime of trial."  *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996).

Furthermore, the fact that these actions and communications all occurred near or during the period of the charged conspiracy also supports the conclusion that they constitute intrinsic evidence.  *See* ECF No. 210 at ¶ 24 (alleging, in Count One, a conspiracy between December 19, 2020, and January 6, 2021).  "The well-established rubric in this Circuit for distinguishing intrinsic from extrinsic evidence rests largely on temporal proximity." *United States v. Thorne*, Crim. 1:18-cr-389 (BAH), 2020 WL 122985, at *13 (D.D.C. Jan. 10, 2020).

### B.  The Weapons Evidence Is Alternatively Admissible Rule 404(b) Evidence

Even if the weapons evidence is not deemed to be intrinsic, the evidence would be properly admitted under Rule 404(b).  The Federal Rules of Evidence simply prohibit "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[11]  Fed. R. Evid. 404(b).  However, the evidence of other acts is admissible if offered for a purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.*  The list of permissible uses of bad act evidence is illustrative—not exhaustive.  *See, e.g.*, *Bowie*, 232 F.3d at 933 (approving admission of other crimes evidence to corroborate other evidence).  The D.C. Circuit has held that Rule 404(b) is "'quite permissive,' excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character."  *United States v. Long*, 328 F.3d 655, 660–61 (D.C. Cir. 2003) (quoting *Bowie*, 232 F.3d at 929–30); *see also United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990).

Here, this evidence is admissible as relevant to the defendants' intent—and to anticipate a likely defense of lack of intent or knowledge.  *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and

---

[11] Although the United States submits this evidence is intrinsic evidence, this filing is intended alternatively to satisfy the government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that the government intends to admit at trial, and it is not an exclusive list of the specific pieces of evidence that the government may admit in support of these areas of activity.  Fed. R. Evid. 404(b)(2)(A).

introduce the evidence in its case-in-chief."); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief.").

To determine whether bad acts evidence is admissible, the court first determines "whether the evidence is probative of some issue other than character." *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002). Evidence of other crimes is admissible if it "is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime or act." *Id.* (citing *Bowie*, 232 F.3d at 926–27). "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *United States v. Moore*, 732 F.2d 983, 987 n.30 (D.C. Cir. 1984).

Notably, other crimes evidence is often relevant to several issues. In its *en banc* decision in *United States v. Crowder*, the Court of Appeals stated:

> Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like. Proof of an individual's intent to commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago. In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits. Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact—motive—from which it could in turn infer the element of possession. Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

141 F.3d 1202, 1208 (D.C. Cir. 1998) (en banc). Thus, in *Crowder*, other crimes evidence was admitted to show the defendant's knowledge, intent, and motive.

In the upcoming trial, a central issue will be the defendants' intent to commit the crimes

for which they are charged.  *See* ECF No. 294 at 5 ("The point of contention lies in Mr. Kinnison's intentions amidst the unfolding chaos.").  The weapons evidence is not offered generally to prove their character, but rather to prove their preparation for January 6, their anticipation of what would occur, and their motive, intent, and absence of mistake while on Capitol grounds.  The evidence shows that the defendants did not agree to travel to Washington, D.C. on January 6 to be mere tourists or spectators.  They agreed to travel across the country to be there because they were intent on obstructing and disrupting the Electoral College vote certification and anticipated that such an effort could require violent force.  *See United States v. Fitzsimons*, 605 F. Supp. 3d 92, 102 (D.D.C. May 24, 2022) (holding that the defendant's calls to congressional offices in December 2020 in which he referenced election fraud were admissible under Rule 404(b) to January 6 case because "[w]hile Fitzsimons did not advocate or express the intent to engage in unlawful activity in the calls, his statements are directly relevant to what the Government claims is Fitzsimons's motive and purpose that day: to obstruct the certification of the electoral college vote, by violence if necessary.").

The bench trial of *United States v. Bradley Wayne Weeks*, 1:21-cr-247 (TFH), is instructive. There, the defendant (like the defendants here) was charged with Obstruction of the Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2, among other offenses.  In issuing the court's ruling, Judge Hogan stated, "the issue in the case is the intent of Mr. Weeks, I think, more than anything else, as how we determine his intent in this matter, that he attempted to or did obstruct or impede an official proceeding, that he intended to do that, and that he acted knowingly with the awareness of the probable cause of his conduct, to obstruct or impede an official proceeding, and he acted corruptly."  Exhibit A, Transcript, Bench Trial, *United States v. Weeks*, 1:21-cr-247 (TFH), at 68.  The defendant in *Weeks*, like the defendants here, was not

alleged to have carried a firearm on Capitol grounds.  The court nevertheless found that his statement in the days leading up to January 6 about carrying a weapon was probative of his intent. Specifically, the court cited a December 23 text message from the defendant in which he said that on January 6 he and an associate "are going to D.C. and . . . . [w]e will be packing."  *Id.* at 69–70. The court also found that evidence that the defendant had packed weapons to take with him also "[goes] to his intent and what he proceeded to do about whatever he had to do to overcome the electoral process."  *Id.* at 77–78.  The proposed weapons evidence here is similarly probative of the defendants' intent and should be not excluded.

### C.  The Probative Value of the Weapons Evidence Is Not Substantially Outweighed by Unfair Prejudice

Whether admissible as intrinsic evidence or under Rule 404(b), the weapons evidence is not unfairly prejudicial under Rule 403.  "[T]he test under 403 is 'unfair prejudice,' not just any prejudice or harm to the defense."  *United State v. Sitzmann*, 856 F. Supp. 2d 55, 61–62 (D.D.C. 2012).  "[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged."  *United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) (internal quotation marks omitted).  "[B]ad acts evidence is typically 'not barred by Rule 403 where such evidence did not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged.'"  *United States v. Wilkins*, 538 F. Supp. 3d 49, 78 (D.D.C. 2021) (quoting *United States v. Fuertes*, 805 F.3d 485, 494 (4th Cir. 2015)) (cleaned up).

The trial evidence will show the defendants on Capitol grounds in the midst of a violent riot and, in Defendant Warner's case, breaking into the Capitol building itself.  The defendants were on Capitol grounds wearing helmets, plate carrier vests, and other tactical gear, and Defendants Warner and Mele are visibly carrying bear spray.  The trial evidence will include,

among other things, a social media post by Defendant Mele on December 18, 2020, that the "deep state . . . chose Treason" and "[t]hey will all hang." In this context, the proffered weapons evidence is not "any more sensational or disturbing" than the charged offenses. *Wilkins*, 538 F. Supp. 3d at 78; *see also United States v. Fitzsimons*, 1:21-cr-158, 2022 WL 1658846, at *6. Moreover, the weapons evidence is not "unfairly prejudicial" because it bears directly on the conduct at issue and has a "a close relationship to the offense charged." *Johnson*, 802 F.2d at 1464. The weapons evidence therefore should not be excluded under Rule 403.

In any case, any prejudice that may result from introduction of the weapons evidence may be cured by a proper limiting instruction. "The D.C. Circuit has consistently minimized the residual risk of prejudice [from 404(b) evidence] not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, 1:12-cr-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider the weapons evidence only in relation to the defendants' preparation, motive, intent, and lack of mistake or accident. Accordingly, the Court should—consistent with the general rule of inclusion in such instances—permit testimony of this probative, relevant evidence, and guard against any undue prejudice by providing a limiting instruction if necessary.

## V.   The Court Should Deny the Defendants' Motion To Exclude Evidence of Their Conduct on January 4 and 5, 2021

Defendant Mele moves to exclude "any video of any confrontation by 3rd parties near the White House on January 5, 2021 and any other videos whether body cam or social media showing the disturbance near the White House." ECF No. 301 at 1. Similarly, Defendant Martinez moves to exclude the government's noticed Rule 404(b) evidence regarding the defendants' conduct on

31

January 5, 2021.[12]  This evidence, however, is intrinsic to the charged conspiracy; it is relevant to, among other things, the defendants' intent, preparation, and lack of mistake in relation to their conduct on January 6; and it is not unfairly prejudicial.  The motion to exclude it should be denied accordingly.

As an initial matter, the United States seeks to clarify its Rule 404(b) notice, *see* ECF No. 199.  In that notice, the United States provided notice of its intent to introduce evidence at trial related to "the conduct of Warner, Kinnison, Mele, and Martinez in Washington, D.C. on January 5, 2021."  *Id.* at 1–2.  Further investigation has clarified that certain conduct the United States believed to have taken place on January 5, in fact, occurred on January 4.  Discovery provided to defendants to date, which was provided as relevant to January 5, included videos in fact taken on January 4.  *See* ECF No. 300 at 1 (referring to a video titled "20210104-FIRST_AMENDMENT-1500_EYE_ST_NW").  For the same reasons the January 5 evidence is admissible, the January 4 evidence is admissible.  *See* ECF No. 199.

The confrontations between local police and the defendants in Washington D.C. on January 4 and 5 are squarely within the time period of the charged conspiracy.  During those confrontations,

---

[12] Defendant Martinez also moved to exclude evidence related to Alan Hostetter's November 2020 trip to Washington, D.C.  ECF No. 311 at 6.  The United States does not anticipate introducing this evidence in the trial against these defendants.  However, the United States will not commit that it will not introduce evidence regarding the conduct of Russell Taylor or Alan Hostetter, who are both alleged coconspirators of these defendants.  Defendant Martinez misstates the evidence in this case.  He claims, "[t]here are no allegations in the indictment that Martinez has ever met or communicated with Hostetter."  *Id.* at 6.  Paragraphs 38, 41, 42, at 58 of the Second Superseding Indictment provide evidence to the contrary.  *See* ECF No. 210.  The Second Superseding Indictment also alleges that "Taylor met MARTINEZ and KINNISON on the Upper West Terrace of the Capitol."  ECF No. 210 at ¶ 69.  Defendant Martinez knows from reviewing the video evidence that Alan Hostetter was with the three other men in those moments on the Upper West Terrace as well; indeed, it was Alan Hostetter who took a photograph of the group.  They were not charged together, as Defendant Martinez says, through "some kind of mistake."  ECF No. 311 at 6.  They were charged together because they are conspired together to obstruct Congress through the DC Brigade Telegram group.

the defendants, among other things, wore much of the same tactical gear they would wear when storming the Capitol grounds on January 6. The defendants were pepper-sprayed by police officers while others in their group defied police commands, carried hockey sticks and other makeshift weapons, and verbally berated the police.

On the evening of January 4, all four defendants joined with others in standing off against a police line, which was separating the defendants and others from another group. The four defendants are indicated below.



On the evening of January 5, Defendant Warner, wearing a helmet and standing a few feet from a police line, as shown below, yelled at the police, among other things, "Apparently you're not on our side." After a confrontation with the police by another individual, police deployed pepper spray, and Defendant Warner, after briefly retreating, moved toward the police line.



Also on the night of January 5, Defendants Martinez, Kinnison, and Warner stood face-to-face with a police line, while others around them yelled expletives at the police and physically engaged with the police. The conduct of the group prompted the police to deploy pepper spray at Defendants Martinez, Kinnison, and others, as shown below.







Defendant Martinez boasted about being involved in these confrontations in a message sent to his codefendants on the night of January 5, ECF No. 199 at 7–8. All four men joined together in storming Capitol grounds the following day, where they were again confronted by police lines they chose to ignore.

The defendants engaged in this conduct on January 4 and 5, together, during their joint excursion to Washington, D.C. for the purpose of obstructing the certification of the election. They

did so after they had spent days sending text messages and making Facebook posts describing themselves as "soldiers hitting the highway" and coordinating their plans to bring weapons and radios for communications.  ECF No. 210 at ¶¶ 50–53.

Count One charges the defendants with conspiring to obstruct an official proceeding, beginning on December 19, 2020 and continuing through at least January 6, 2021.  The defendants' conduct and communications on January 4 and 5 were therefore "contemporaneous[] with the charged crime," *Bowie*, 232 F.3d at 929, and constitute evidence of the charged offense.  Simply put, this evidence is integral to the charged conspiracy.  *See United States v. Edwards*, 889 F. Supp. 2d 47, 49–51 (D.D.C. 2012) (listing cases finding evidence admissible in conspiracy cases applying the "*Bowie* formulation").

Moreover, even if this evidence were not integral to the conspiracy, it would be admissible for multiple permissible purposes set forth in Rule 404(b): it is probative of the defendant's agreement to undertake corrupt and wrongful actions; of the defendants' intentions to disrupt law enforcement efforts to secure Washington, D.C. in connection with Congress's certification of the Electoral College vote; of the defendants' planning in undertaking coordinated actions; of the defendants' lack of mistake in joining another armed and confrontational mob and illegally remaining in a restricted area on January 6; and of the defendants' shared motive.  This evidence is thus not "offered for the sole purpose of proving that a person's actions conformed to his or her character," and under the "permissive" standard of Rule 404(b), it should be admitted.  *Long*, 328 F.3d at 660–61.

Lastly, the defendants have not, and cannot, show that this evidence is unfairly prejudicial, let alone that any unfair prejudice would substantially outweigh the evidence's probative value. The defendants' confrontations with police on January 4 and 5 do "not involve conduct any more

36

sensational or disturbing than the crimes with which the defendant[s] were charged." *Wilkins*, 538 F. Supp. 3d at 78. To the contrary, the defendants' conduct on January 4 and 5 shows them engaging in conduct similar to their January 6 conduct—only in a context that proved to be significantly less dangerous than the riot on January 6.

Accordingly, the defendants' motions to exclude evidence of their conduct on January 4 and 5 falls far short of meeting the high bar for exclusion pursuant Rule 403 or 404(b), and the motions should be denied.

## VI.    The Court Should Deny the Defendants' Motion To Exclude Evidence of Their Intent

Defendant Mele moves regarding "Defendant['s] inten[tion] to breach the Capitol or commit violent acts on Capitol grounds." ECF No. 304 at 1. Defendant Mele's motion is wholly unclear as to what he seeks to exclude on this point. It appears to be duplicative of Defendant Mele's motions in ECF Nos. 300 and 302, which are discussed above in Sections II.C and II.D.

In the "Introduction" to his motion, Defendant Mele "seeks an order that . . . Defendant intended to breach the Capitol or commit violent acts on Capitol grounds." *Id.* at 1. The remainder of Defendant Mele's motion mentions "intent" only once: "The defendant never had any intent to enter the capital and even if he did, without more it is not illegal to have intent." *Id.* at 2. To the extent Defendant Mele's motion seeks to exclude evidence of his intent, it can readily be denied. Of course, the defendants' intent is relevant to this case, as intent is relevant to almost every prosecution. It is, therefore, unsurprising that Defendant Mele offers absolutely no support for his suggestion that it be excluded. Breaking into the U.S. Capitol is one of the ways rioters effected their plan to obstruct Congress; so any intention to that end would be highly relevant. Likewise, any intent by the defendants to engage in acts of violence would be relevant to their intent with respect to obstruction of the official proceeding or disorderly and disruptive conduct.

In the "Argument" section of this motion, Defendant Mele writes, "The defendant was not charged with entering the Capitol building and therefore any mention [of] evidence regarding breaking into the Capitol should be excluded." ECF No. 304 at 2. But that Defendant Mele is not charged with entering the building itself does not lead to the conclusion that his intent to do so would be *irrelevant*. Moreover, Defendant Mele filed a separate motion regarding the entry of the U.S. Capitol building by other rioters. *See* ECF No. 302. That motion is discussed in Section II.D.

Finally, in the Argument section of this motion, Defendant Mele writes, in support of a motion to exclude under Rule 404(b), "The government is trying to show that the others engaged in bad conduct and are therefore bad people so therefore the defendant must be a bad person as well and therefore guilty." ECF No. 304 at 2. This argument appears similarly to relate to evidence of other individuals entering the Capitol building or engaged in other conduct on Capitol grounds. These arguments are likewise addressed in separation motions, ECF Nos. 300 & 302, and are discussed in Sections II.C–D. In any event, conduct that occurred at the U.S. Capitol building on January 6, 2021 would not constitute extrinsic 404(b) evidence.

## VII.   The Court Should Deny the Defendants' Motion To Exclude Evidence of Their Association with a Three Percenter Militia

Defendant Martinez moves to "prohibit the government from introducing paraphernalia related to the Three Percenter 'far-right anti-government militia,' such as clothing, patches, flags, knickknacks, manuals, literature, etc, as well as evidence of gun ownership/use." ECF No. 311. Because the evidence of the defendants' Three Percenter association is intrinsic to the crime, relevant, and not unfairly prejudicial, the Court should deny the motion.

The defendants are Three Percenters. This is not a government characterization: they say so. On December 1, 2021, Defendant Kinnison introduced the four defendants to the DC Brigade Telegram group with a reference to their Three Percenter affiliation.

38

From: 1029438066 Derek Midnightrider

From left to right, I'm Derek aka midnightrider the short guy, Tony aka blue collar patriot, Erik aka silvir surfer, and last brother Lou on the right will be there with us in spirit as he lost his battle with pneumonia and chyna virus on Tuesday. We are 3 percent so cal. Also coming with us is redline Ron

Along with that introduction, Defendant Kinnison included a photograph of Defendants Kinnison, Martinez, and Warner, along with another individual, standing behind a black "California Three Percenters" flag and holding out a Three Percenter hand signal.



That same day, Defendant Warner introduced himself to the DC Brigade Telegram group with a photograph of himself, wearing a Three Percenter shirt.

39



In another post introducing their group to the DC Brigade group, Defendant Kinnison again invoked their affiliation with "so cal 3%."

From: 1029438066 Derek Midnightrider

I'm Derek, driving up with Tony Redline and Erik. We are part of so cal 3%, we work well and train with each other. Leaving tomorrow and driving instead of flying because our luggage would be too heavy  We will have lots of gear from medical kits, radios, multiple cans of bear spray, knives, flags, plates goggles, helmets. I'm not military or Leo but I can order a mean pizza reach things on the top shelf and know how to give Indian burns.  I think we should clear all text in this chat the morning of the 5th just in case for opsec purposes.

These are not empty references.  The defendants are principally associated through their shared Three Percenter affiliation.  A document, excerpted in part below, which was seized from Defendant Kinnison's phone reflects the four men are all part of "Area B" of "CA III% Zone 8."



To endeavor to distort this case to exclude any Three Percenter evidence would create confusion and lead to absurd results. The defendants are alleged to have conspired with Russell Taylor and Alan Hostetter through the DC Brigade Telegram group, and their introductory messages in that group refers to their Three Percenter identity. Those references cannot be excised without confusion. Moreover, the defendants are regularly photographed in Three Percenter attire and holding up the Three Percenter hand signal. For example, the four defendants posed for a photograph before driving to Washington, D.C. in January 2021, in which they all held up a Three Percenter hand signal. At trial, the United States will offer this photograph to establish the fact of their joint travel, and a timeline for their departure. Their hand signals cannot be ignored or redacted without creating confusion.



The below is another example from the morning of January 6, 2021, of the group wearing Three Percenter clothing and holding up a Three Percenter hand sign.



The United States cannot be asked to redact the defendants' clothing and hand signals because of a vague and unsubstantiated concern from Defendant Martinez that "unfair prejudice" would result.  ECF No. 311 at 10.

Defendant Martinez makes three arguments to exclude evidence of the defendants' Three

Percenter affiliation, and each fails.  First, Defendant Martinez claims that any reference to the Three Percenter group "would constitute 'bad act' evidence that would not satisfy Rule 404(b)(2)." *Id.* at 9.  But, as discussed above, "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992).  Here, the defendants injected their Three Percenter affiliation into this case through their repeated invocation of that identity as relevant to their participation in the DC Brigade.  What's more, the defendants did not mention it merely in passing: instead they elaborated about the importance of that affiliation.  "We work well and train with each other," Defendant Kinnison explained.  These affiliations are naturally admissible in conspiracy cases to provide context and background, explain the relationships between defendants, and demonstrate their intent to act in concert.  *See United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) ("In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses 'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.'" (quoting *United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000))); *see also United States v. Machado-Erazo*, 47 F.4th 721, 728 (D.C. Cir. 2018); *cf. United States v. Nordean*, No. CR 21-175 (TJK), 2023 WL 3250678, at *4 (D.D.C. May 4, 2023) (noting the admission of evidence from other rallies was relevant to show the "defendants' relationships of trust with each other.").

Second, without arguing the point, Defendant Martinez claims "[a]ny probative value would be substantially outweighed by the risk of unfair prejudice."  ECF No. 311 at 10.[13]  As an

---

[13] The out-of-circuit cases cited by Defendant Martinez are not persuasive in his favor.  One of the cases, *United States v. Elkins*, 70 F.3d 81 (10th Cir. 1995), does not deal with trial evidence or engage in any Rule 403 analysis.  The other case, *United States v. Irvin*, 87 F.3d 860 (7th Cir.

initial matter, the defendants' association, together, with the Three Percenters is highly relevant to the charged conduct, based on the evidence discussed above.  The evidence of the defendants' Three Percenter association provides background of the conspiracy, their relationship, the trust among the defendants, their training efforts, and their commitment to concerted action.  Defendant Martinez never argues what prejudice arises from his association with the Three Percenters.  But even if Defendant Martinez's association with the Three Percenters created some prejudice, there is no suggestion that that prejudice would be unfair, where the defendants openly tethered their association with the group to their January 6 conduct.

Finally, Defendant Martinez argues that "[i]ntroduction of this evidence would violate Martinez's First Amendment rights."  ECF No. 311 at 10.  For the same reasons the Court should grant the United States' motion *in limine* regarding the First Amendment, Defendant Martinez's argument should be rejected.  *See* ECF No. 292 at 20–21.  That a defendant has a First Amendment right to make certain statements or to have certain associations, does not make that evidence excludable.  *See United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) ("Nor does the Court find any First Amendment concerns in the government's use of [defendant]'s statements to show intent."); *cf. Dawson v. Delaware*, 503 U.S. 159, 165 (1992) ("[T]he Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment.").

---

1996), recognizes the general principle "that, under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice," *id.* at 864, but found certain evidence improperly admitted where there was no conspiracy charge and where the court found the prosecution used "highly charged gang-affiliation evidence . . . as a substitute for . . . direct evidence," *id.* at 866 ("This missing link between the gang and the criminal activity at issue distinguishes this case from other cases where gang evidence has been found admissible for the purpose of establishing a joint venture or the existence of a conspiracy." *Id.* at 864 n.4.).  Here, the defendants' affiliation bolsters, but does not substitute for evidence of their crimes.

Just as the United States may use a defendant's statements to prove knowledge, intent, or motive, the United States may use the defendants' association with one another through the Three Percenters as evidence of the conspiracy.  Unlike in the cases Defendant Martinez cites, it cannot be said that the defendants' Three Percenter association is "not tied in any way" to the crimes charged.  *Dawson*, 503 U.S. at, 166 ("[T]he inference which the jury was invited to draw in this case tended to prove nothing more than the abstract beliefs of the Delaware chapter.").  The defendants center their Three Percenter identity in this conspiracy, and it cannot be avoided.[14]

Because the defendants' association with the Three Percenters is relevant, not unfairly prejudicial, and intrinsic to the crimes charged, Defendant Martinez's motion should be denied.

## VIII.  The Court Should Deny Defendant Warner's Motion To Exclude Inculpatory Evidence

In a two-and-a-half-page list, Defendant Warner seeks to exclude eighteen different categories of evidence.  *See* ECF No. 312.  Local Rule 47(a) provides that "[e]ach motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts."  LCrR 47(a).  Unfortunately, Defendant Warner's motion is entirely devoid of citation to specific points of law or authority, or any meaningful analysis, beyond a conclusory introduction which states that the ensuing list of evidence is "not relevant" and "the probative value is significantly outweighed by the prejudicial effect."  ECF No. 312 at 1.

Brevity is a virtue, but conclusory arguments are not.  In the absence of actual argument from Defendant Warner—and a passing reference to Rules 401 and 403 should not suffice—the

---

[14] The United States agrees that this Court should clearly instruct the jury on conspiracy and aiding and abetting liability, the elements of which would preclude a jury from finding "guilt by association."

United States submits that the Court should deny the motion *in limine* and reserve rulings for trial, or on the basis of specific evidence included on the government's exhibit list. By September 22, 2023, Defendant Warner and his codefendants will receive a preliminary exhibit list by the United States, and will have the opportunity to raise specific objections at the September 29, 2023 pretrial conference. The Court should deny Defendant Warner's motion *in limine* and take up more specific objections at the pretrial conference or at trial.[15]

Nevertheless, the United States addresses each of the categories of evidence on Defendant Warner's list below. The United States offers its anticipated position with respect to each category, but reserves the right to reconsider these positions as it prepares its exhibit list. Moreover, even where the United States indicates it does not intend to present certain evidence, the United States reserves its right to respond to any issues that arise at trial through the presentation of any relevant evidence.

*Officer Deaths.* The United States does not intend to present evidence regarding law enforcement deaths arising from the January 6, 2021 riot.

*Stop the Steal Lawsuits.* The United States does not intend to present evidence of then-President Trump's stop the steal lawsuits, court challenges, or issues raised by Trump's lawyers about the election, other than any references made by then-President Trump or his supporters at the January 6, 2021 rally at the Ellipse, or evidence showing the personal knowledge of any such information by any of the defendants. What then-President Trump and his supporters said at the Ellipse on January 6, 2021 is relevant to the defendants' knowledge, motive, and intent. Likewise,

---

[15] Should Defendant Warner seek to offer legal support for his motion through his reply brief, the United States will respectfully move for permission to submit a surreply. But the United States believes all these motions can be more effectively addressed at the pretrial conference after exhibit lists have been exchanged.

any discussion by a defendant of these lawsuits or efforts by then-President Trump and his lawyers would be relevant to their knowledge, motive, and intent.  To the extent such evidence is introduced, Defendant Warner may argue to the jury that he "is not an attorney."  ECF No. 312 at ¶ 2.

*Proud Boys, Patriot Boys, Three Percenters, and Oath Keepers.*  The United States does not intend to present evidence regarding the "proud boys" or "patriot boys."  ECF No. 312 at ¶ 3. The United States does not intend to introduce "information regarding the Oath Keepers using a hotel in Virginia to stage weapons in the event that martial law was declared on January 6, 2021." *Id.*  Evidence may be introduced regarding Defendant Kinnison's association with the Oath Keepers.  Evidence will also be introduced regarding the Three Percenters, as discussed above in Section VII.  Defendant Warner claims he is "not a member" of the Three Percenters, ECF No. 312 at ¶ 3, but, as alleged in the Second Superseding Indictment, Defendant Kinnison introduced these defendants to the DC Brigade Telegram group as "3 percent so cal," along with a photograph of Defendants Kinnison, Martinez, and Warner, ECF No. 210 at ¶ 43; *see also id.* at ¶ 44 (Telegram message from Defendant Kinnison: "We are part of so cal 3%, we work well and train with each other.").  Moreover, exclusion of "[a]ny reference," ECF No. 312 at ¶ 3, to the Three Percenters would actively create confusion with the jury, because the defendants regularly photographed themselves and each other flashing a Three Percenter hand signal, wearing attire labeled with Three Percenter insignias, and carrying Three Percenter flags.

*Photographs from Defendant Warner's Phone.*  The United States agrees with Defendant Warner that irrelevant evidence should be excluded.  Beyond that, the scope of Defendant Warner's motion—to exclude "[a]ny photos taken from Mr. Warner's phone that are irrelevant to this case," ECF No. 312 at ¶ 4—is unclear.  The United States does not intend to offer evidence of

Defendant Warner's personal life unrelated to the charges in this case.  However, the United States will seek to introduce limited photographs unrelated to January 6, 2021 conduct in order to demonstrate a gap in Defendant Warner's cell phone's photo library on and around January 6, 2021.  The United States will use such evidence to argue Defendant Warner intentionally deleted relevant evidence to cover up his conduct in support of the Count Eight, 18 U.S.C. § 1512(c)(1) (Tampering with Documents or Proceedings) charge.  This is precisely the type of motion that can better be addressed on an exhibit-by-exhibit basis, rather than in an unnecessary and vague motion *in limine*.

*Guns.*  The collection of weapons, including guns, by conspirators is discussed in Section IV.

*Mug Shot.*  The United States will seek a stipulation regarding the identity of Defendant Warner and his codefendants and their presence on U.S. Capitol grounds on January 6, 2021.  That stipulation will employ photographs of the defendants.  If the parties are able to reach a stipulation, the United States does not anticipate using any defendant's mug shot.  In the absence of a stipulation, the United States may use a defendant's mugshot to establish identity or as a demonstrative.

*Social Media Posts by Others.*  It is unclear what Defendant Warner seeks to exclude with "[a]ny tags from anyone else on Facebook or any other social media not related to January 6, 2021."  ECF No. 312 at ¶ 7.  The United States does not intend to present evidence of any social media posts that none of the defendants would have seen.  However, evidence from the social media accounts of the defendants, including communications and posts from others, where a defendant was tagged or otherwise engaged, may be relevant.  There is no basis to wholesale exclude such evidence *in limine*, when defense counsel can argue the weight of such evidence at

trial.  Moreover, this evidence can more easily be addressed on an exhibit-by-exhibit basis at the pretrial conference.

_Body Armor or Plates._  The collection of weapons, including plates, by conspirators is discussed in Section IV.

_Bear Spray._  Defendant Warner moves to exclude "[a]ny mention of bear spray.  Mr. Warner maintains he never purchased or possessed bear spray."  ECF No. 312 at 3.  That is Defendant Warner's argument—in its entirety.  But these factual disputes are exactly what trials are for.  The United States should not be precluded from introducing evidence probative of the defendant's guilt on the grounds that the defendant proclaims his innocence.

The evidence at trial will show that Defendant Warner was carrying an object that appears to be bear spray.  There is no reason to exclude that evidence simply because the defendant says he didn't do it.  The jury can review and assess the evidence.





*Defendant Warner's Home Address.*   The United States does not intend to introduce evidence of Defendant Warner's home address.   However, the United States should not be precluded from establishing the defendants' cities and state of residence at the time of the riot, nor from introducing proof that relevant items of evidence were seized from the defendants' residences.

*January 4 and 5 Conduct.*   The defendants' conduct on January 4 and 5 is discussed in Section V.

*Facebook Posts.*   The United States agrees with Defendant Warner that irrelevant evidence should be excluded.   Beyond that, the scope of Defendant Warner's motion—to exclude "[a]ny Facebook posts/memes that are irrelevant to the charges in this case," ECF No. 312 at ¶ 12—is unclear.   The Court can address objections on an exhibit-by-exhibit basis at the pretrial conference, rather than in an unnecessary and vague motion *in limine*.

*Defendant Warner's GiveSendGo Page.*   Defendant Warner's GiveSendGo fundraising website, created by Defendant Warner's wife, includes statements regarding Defendant Warner's intention on January 6, 2021.   For example, the website states, "The goal of these men was to

provide a watchful eye on families, woman[sic] and elderly attendees for fears of them being targeted by groups wishing to do them harm."  Exhibit B.  In an update, the website states, "He was standing up for all of our rights and did so peacefully!"  *Id.*

Although the campaign was created by Defendant Warner's wife, by their own terms, the statements on this website are being made on behalf of Defendant Warner as well.  For example, the website states, "*We* thank you for your willingness to help, God Bless the gift and the giver." *Id.* (emphasis added)  An update states, "*My husband Erik and I* continue to believe in this great country and we continue to stand up for the values that are a part of our foundation.  It is a big fight though and a tough process when you realize the United States Government is after you."  *Id.* (emphasis added).

These statements are directly relevant to the defendant's conduct on January 6, 2021, and Defendant Warner offers no support for his motion to exclude these *in limine*.  While the United States does not intend to affirmatively use this material in its case-in-chief, these statements may be relevant for cross-examination of defense witnesses.

*Pictures from the Search of Defendant Warner's Home.*  The United States agrees with Defendant Warner that irrelevant evidence should be excluded.  Beyond that, the scope of Defendant Warner's motion—to exclude "[p]ictures of items in the house such as T-shirt, fireworks, flags, Trump memorabilia etc. that are not related to J6," ECF No. 312 at ¶ 14—is unclear.  The Court can address objections on an exhibit-by-exhibit basis at the pretrial conference, rather than in an unnecessary and vague motion *in limine*.

*Items Seized from Defendant Warner's Home.*  The United States agrees with Defendant Warner that irrelevant evidence should be excluded.  Beyond that, the scope of Defendant Warner's motion—to exclude "[i]tems taken from house (inventoried) that are not related to J6,"

ECF No. 312 at ¶ 15—is unclear.  The Court can address objections on an exhibit-by-exhibit basis at the pretrial conference, rather than in an unnecessary and vague motion *in limine*.

*Voicemail from Defendant Warner's Mother.*   On January 7, 2021, Defendant Warner received a voicemail from his mother.  In it, she said: "Eric, you've got to call me when you get this phone message.  You're on television, on Tucker Carlson.  Your picture's right there.  I mean, you've gotta call me.  Please call me.  Please.  Thank you."  Among his other charges, Defendant Warner is also charged in Count Eight with Tampering with Documents or Proceedings, in violation of 18 U.S.C. § 1512(c)(1).  For this offense, Defendant Warner's knowledge of an investigation into his conduct at the U.S. Capitol—which can be shown through his knowledge of his photograph being broadly publicized—is highly relevant.

*DaVita.*   The United States does not intend to introduce evidence of Defendant Warner's specific employer, DaVita.  However, because messages from the defendants repeatedly refer to Defendant Warner as a "nurse," that prior position may be introduced into evidence.

*Trump or Republican Rallies.*   The United States does not currently intend to introduce evidence of Defendant Warner's attendance at any rally in support of then-President Trump or other Republican candidates prior to his arrival in Washington, D.C. in January 2021.  However, Defendant Warner's attendance at other rallies in support of then-President Trump could be relevant to his knowledge, intent, and motive.  To the extent the United States identifies such evidence, it should not be excluded pretrial.

## IX.    The Court Should Deny the Defendants' Request for an Order that the United States Identify All Coconspirator Statements

Defendant Martinez asks that the Court "order[] the government to promptly identify the coconspirator statements it plans to introduce."  ECF No. 311 at 8.  Defendant Martinez says that this will allow the Court "to determine whether the Court should eschew the 'preferred practice'

of holding a pretrial hearing to decide whether the basic elements of conspiracy are satisfied." *Id.*

In his filing, Defendant Martinez repeatedly claims that the D.C. Circuit has endorsed "a pretrial hearing" on 801(d)(2)(E) as the "preferred practice." ECF No. 311 at 599 at 5, 8. But that is flatly wrong. Both primary cases Defendant Martinez cites, *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980), and *United States v. Slade*, 627 F.2d 293, 307 (D.C. Cir. 1980), remarked only that the that the "preferred practice is for the trial court to make these determinations *before the hearsay evidence is admitted*," *Slade*, 627 F.2d at 307 (emphasis added); *see also Jackson*, 627 F.2d at 1218 ("the better practice is for the court to determine *before the hearsay evidence is admitted* that the evidence independent of the hearsay testimony proves the existence of the conspiracy sufficiently to justify admission of the hearsay declaration" (emphasis added)). Defendant Martinez obscures that neither case called for a "pretrial hearing."[16]

In fact, the preferred practice is to avoid a minitrial to address coconspirator statement admissibility. "In this district it is common practice for a court to avoid a disfavored mini-trial of the evidence by deferring its determination regarding the admissibility of alleged co-conspirator statements until after the close of the government's case." *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (internal quotation marks omitted) (quoting *United States v. Cooper*, 91 F.Supp.2d 60, 78 (D.D.C.2000)); *see also United States v. Jackson*, 627 F.2d 1198, 1218 (D.C.

---

[16] Defendant Martinez's citation to *United States v. Wilkins*, 538 F. Supp. 3d 49 (D.D.C. 2021), is even more misleading. Defendant Martinez cites *Wilkins* for the proposition that the preferred practice is to determine admissibility of coconspirator statements prior to admission, and quotes "such 'pre-trial ruling[s], if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations' prior to trial." ECF No. 311 at 5 (quoting *Wilkins*, 538 F. Supp. 3d at 63). In reading Defendant Martinez's filing, one might be left with the impression that *Wilkins* was a case addressing coconspirator statements and supportive of his position. But *Wilkins* was not dealing with admissibility of coconspirator statements at all. The quotation Defendant Martinez invokes refers only generally to motions *in limine*. *See Wilkins*, 538 F. Supp. 3d at 63.

Cir. 1980).  Defendant Martinez can cite only a single case from this district where a court has granted a request like his.  Even there, in *United States v. Bazezew*, the district court only ordered the government to "produce" the co-conspirator statements; it reserved the question of whether a "lengthy pretrial hearing" would be necessary.  783 F. Supp. 2d 160, 166 (D.D.C. 2011) (noting that resolution of admissibility of coconspirator statements pretrial is appropriate in only "unusual cases").

Foregoing such proceedings prior to trial is entirely proper, and, in fact, as the cases cited by Defendant Martinez make clear, the necessary findings can even wait until after the statement has been introduced, because a court "may, in [its] discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of the conspiracy." *Jackson*, 627 F.2d at 1218 (quoting *United States v. Vaught*, 485 F.2d 320, 323 (4th Cir. 1973)); *see also United States v. Slade*, 627 F.2d 293, 307 (D.C. Cir. 1980) (noting that the trial court "retains discretion . . . to admit particular co-conspirator statements conditioned on a later showing of substantial independent evidence of the three prerequisites for their admission").

There are good reasons that this district rejects minitrials on the admissibility of coconspirator statements.  For one, such hearings would involve the same evidence to be later offered at trial, making them "wasteful of judicial time, as the hearing and trial testimony . . . would have been largely duplicative." *United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997).  For another, they might give the defense "two bites at the apple to cross-examine" witnesses. *United States v. Apodaca*, 275 F. Supp. 3d 123, 139 (D.D.C. 2017).  And third, given the frequent importance of cooperator testimony in proving conspiracies, pretrial hearings would often pose risks to witness safety. *See United States v. Edelin*, 128 F. Supp. 2d 23,

45 (D.D.C. 2001).

Moreover, binding Circuit precedent holds that the United States need not specify every coconspirator statement it intends to offer at trial, because "[n]othing in the Federal Rules of Evidence or in the Jencks Act requires such disclosure." *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988). In this case, the United States has already provided the defense, through discovery, numerous coconspirator statements in the form of chat messages and videos, which the United States anticipates will be offered as exhibits at trial. As *Tarantino* makes clear, there is no separate requirement that the United States identify other coconspirator statements that may be proven by, for example, the testimony of cooperating witnesses.

In any event, if Defendant Martinez wants the result from *Bazezew*, he already has it, because the United States is already producing to the defense a full set of exhibits according to a deadline negotiated and agreed to by the parties and approved by the Court. *See* ECF No. 208. These exhibits will constitute the vast majority of coconspirator statements to be offered at trial, because the conspirators did most of their communicating by means of Telegram and similar digital channels. Defendant Martinez is therefore fully able to make arguments that any particular statement fails to satisfy the requirements of Rule 801(d)(2)(E), and the Court is fully able to consider them. Defendant Martinez's motion should therefore be denied.

## X.     The Court Should Defer The Defendants' Motion To Allow Use of Certain Videos During Opening and Closing

Defendant Mele moves to "allow the defendant use of certain videos at opening and closing showing the defendant's movements in January 2021 to Washington D.C., and additionally, the defendant's movements in Washington D.C., on Jan 6, 2021." ECF No. 308. Like the defendants, the United States also anticipates using certain evidence in its opening statement, closing argument, and rebuttal. But a ruling on this *in limine* is unnecessary and should be deferred until

the Court has the opportunity to address admissibility of exhibits at the September 29, 2023 pretrial conference.  ECF No. 208.

Closing argument and rebuttal should be straightforward, since the parties will be restricted to use of and reference to only admitted evidence.  For opening statements, use of evidence should be restricted to evidence that is expected to ultimately be admissible and admitted at trial.  While this is a principle for both parties, there is particular risk with the defendants' use of evidence in an opening statement, as the defendants have no burden to introduce any evidence and may ultimately elect to rest at the conclusion of the government's case.

To assuage this risk, the United States proposes that the parties exchange, by 5:00PM on October 11, 2023, a list of exhibits each party intends to use, in whole or in part, in its opening statement.  This need not require the exchange any actual demonstratives used during the opening statement, but rather only the underlying exhibits employed in such demonstratives.  To the extent the parties cannot reach agreement on the use of particular exhibits, the parties can then raise any disputes for resolution by the Court on the morning of October 12, 2023.[17]  A similar process should not be necessary for closing arguments, as the parties will be cabined to admitted evidence.

---

[17] A defendant, or defendants, may elect to defer their opening statement to after the government's case.  To the extent any defendant elects that option, that defendant should similarly provide day-ahead notice to the United States of the list of any exhibits—other than those exhibits already admitted—intended for use in his opening, to allow for the opportunity to object.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the requested relief or, if the Court reserves ruling, consider the above arguments when the relevant issues arise during trial.

Date: September 1, 2023

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Anthony W. Mariano*
ANTHONY W. MARIANO, MA Bar No. 688559
JASON M. MANNING, NY Bar No. 4578068
Trial Attorneys, Detailees
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov
(202) 514-6256
Jason.Manning@usdoj.gov