Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Rohit Rajan
Assistant Federal Public Defender
Arizona Bar No. 035023
Rohit_Rajan@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorney for Derek Kinnison

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>        v.<br><br>Derek Kinnison,<br><br>               Defendant. | Case No. 1:21-cr-392-RCL-5<br><br>**Defendant's Motion for Refund of Restitution and the Special Assessment** |

  Defendant Derek Kinnison requests an Order directing that he be refunded the money he paid to satisfy the special assessment and restitution in this case.[1] Because this Court's judgment, which provided the only basis for collecting this money, has since been vacated, Mr. Kinnison is entitled to a return of this money.

---

[1] On February 28, 2025, undersigned counsel emailed counsel for the government—Assistant United States Attorneys Jason Manning, Anthony Mariano, and Reuven Dashevsky—to inquire about the government's position on this request. To date, government counsel has not responded to that email.

## BACKGROUND

In June 2021, a grand jury indicted Derek Kinnison for five offenses related to the events at the United States Capitol on January 6, 2021. *See* Indictment, ECF No. 1. A little more than two years later, Mr. Kinnison went to trial along with three codefendants. *See* Oct. 12, 2023 Minute Entry. After a seventeen-day trial, the jury convicted him of one count of conspiracy to obstruct an official proceeding, 18 U.S.C. § 1512(k); one count of obstruction of an official proceeding, 18 U.S.C. § 1512(c)(2); one count of entering and remaining in a restricted building or grounds, 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted building or grounds, 18 U.S.C. § 1752(a)(2); and one count of tampering with documents or proceedings, 18 U.S.C. § 1512(c)(1). *See* Verdict Form, ECF No. 376. Apart from imposing a custodial sentence and supervised release, this Court ordered Mr. Kinnison to pay a $350 special assessment and $2,000 in restitution. *See* Judgment, ECF No. 472 at 7. While serving this custodial sentence, Mr. Kinnison satisfied both obligations. *See* Payment Receipt, Ex. A.

During the pendency of Mr. Kinnison's direct appeal of his convictions to the D.C. Circuit, Mr. Kinnison received "a full, complete and unconditional pardon" for these offenses. The White House, *Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021*, Presidential Proclamation, available at https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/; *see also* Kinnison Pardon Certificate, Ex. B. Because the pardon

2

"remove[d] the penalties and disabilities" of Mr. Kinnison's convictions, *Ex parte Garland*, 71 U.S. 333, 380 (1866), the D.C. Circuit ordered this Court to dismiss his case as moot. *See* D.C. Circuit Order, ECF No. 528 at 2. Recognizing that Mr. Kinnison would be denied an opportunity to challenge the validity of his convictions, the D.C. Circuit also vacated his judgment of conviction. *See* D.C. Circuit Order, ECF No. 528 at 2 (citing *United States v. Schaffer*, 240 F.3d 35, 37–38 (D.C. Cir. 2001) (per curiam) (en banc)).

Because that now-vacated judgment provided the only basis for collecting the special assessment and restitution, Mr. Kinnison seeks a refund of the money he paid to satisfy those obligations.

## ARGUMENT

### I. This Court has jurisdiction over the refund request.

Even after judgment issues in a criminal case, "a federal trial court has ancillary jurisdiction to hear and determine claims closely related to and arising out of the criminal proceedings brought before it." *United States v. Hubbard*, 650 F.2d 293, 307 (D.C. Cir. 1980). "[T]his concept of ancillary jurisdiction is flexible," *id.*, and "dictate[s] that the federal courts should extend their jurisdiction to encompass orbital disputes subordinate to the principal action," *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969) (cleaned up). In providing jurisdiction over these claims, ancillary jurisdiction serves "[t]he important policy of having one single expeditious resolution of a dispute," so that "complete justice may be done." *Id.* at 738, 740 (cleaned up).

The four factors that govern the exercise of ancillary jurisdiction comfortably support its application here. *See id.* at 740.

*First*, the refund request relates to matters adjudicated "during the course of the main" criminal proceeding. *Id.* The now-vacated judgment in this case ordered the payment of restitution and the special assessment, which are the items Mr. Kinnison requests refunded. Judgment, ECF No. 472 at 7. As the requested refund is directly tied to and dependent on the judgment, this request is "so closely associated with the criminal proceeding as to be deemed a part of it." *United States v. Bell*, 120 F. Supp. 670, 672 (D.D.C 1954).

*Second*, the refund request "can be determined without a substantial new fact-finding proceeding." *Morrow*, 417 F.2d at 740. As explained below, Mr. Kinnison's entitlement to a refund is a legal question—whether the statutes authorizing restitution and the special assessment require a valid judgment. *See infra*, pp. 5–8. Caselaw answers this question and plainly requires "the refund of exactions dependent upon a conviction subsequently invalidated." *Nelson v. Colorado*, 581 U.S. 128, 139 (2017); *see also infra*, pp. 7–8.

*Third*, no other party would be deprived "of a substantial procedural or substantive right." *Morrow*, 417 F.2d at 740. Rather, it is Mr. Kinnison's due process "interest in regaining [these] funds" that "is high." *Nelson*, 581 U.S. at 139.

*Fourth*, settling this ancillary matter is necessary "to protect the integrity of the main proceeding." *Morrow*, 417 F.2d at 740. "[I]t is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against

4

which no Government claim lies, be returned promptly to its rightful owner." *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976).

Courts have exercised ancillary jurisdiction in several analogous post-judgment contexts. *See, e.g.*, *id.* (request for return of property); *United States v. Hughes*, 813 F.3d 1007, 1010–11 (D.C. Cir. 2016) (request for return of tax refunds); *Morrow*, 417 F.2d at 734–75 (order prohibiting the dissemination of arrest records). Indeed, the criminal rules themselves contemplate that an aggrieved defendant "may move for the[ir] property's return." Fed. R. Crim. P. 41(g). Under this provision, "a wrongfully convicted defendant whose sentence has been vacated may seek monies paid pursuant to a wrongful conviction." *United States v. Hayes*, 385 F.3d 1226, 1229 (9th Cir. 2004). This authority also coincides with this Court's inherent power "to insure that the disposition in the main proceeding will not be frustrated." *Wilson*, 540 F.2d at 1103 (cleaned up).

## II.    A refund is required.

"Federal courts do not have inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), and therefore "may order restitution only when statutes authorize restitution," *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). The same principle applies to the special assessment, which also depends on statutory authorization. *See United States v. Lampkin*, 159 F.3d 607, 615 (D.C. Cir. 1998).

Three statutes authorized the collection of restitution and the special assessment here. Each statute, however, requires a valid conviction. For restitution, this Court and the government relied on both 18 U.S.C. § 3663, the Victim and

5

Witness Protection Act (VWPA), and 18 U.S.C. § 3663A, the Mandatory Victims Restitution Act (MVRA). *See* Sentencing Transcript, ECF No. 501 at 105; Government Sentencing Memo, ECF No. 452 at 72–74. The VWPA authorizes restitution only for "a defendant *convicted of an offense.*" 18 U.S.C. § 3663(a)(1)(A) (emphasis added). The MVRA similarly references "a defendant *convicted of an offense*" in requiring restitution for certain offenses. 18 U.S.C. § 3663A(a)(1) (emphasis added). For the special assessment, this Court relied on 18 U.S.C. § 3013, Judgment, ECF No. 501 at 103–04, which authorizes an assessment only for "any person *convicted of an offense* against the United States." 18 U.S.C. § 3013(a) (emphasis added). The order vacating Mr. Kinnison's judgment "erased" his convictions, thus eliminating the statutory predicate for the restitution and the special assessment obligations. *Nelson*, 581 U.S. at 135 (citing *Johnson v. Mississippi*, 486 U.S. 578, 585 (1988)).

This understanding comports with the conclusions of other courts that have addressed this issue. Courts consistently hold that the vacatur of a defendant's conviction on appeal removes any obligation to pay conviction-dependent fees, costs, and restitution. *See United States v. Brooks*, 872 F.3d 78, 89–90 (2d Cir. 2017) (collecting cases). Addressing these same provisions, these courts explain that "once [a] conviction has been vacated . . . there is no longer a basis to require payment of restitution." *Id.* at 89; *see also United States v. Rich*, 603 F.3d 722, 728 (9th Cir. 2010) (same, also addressing the VWPA). The language "convicted of an offense," which is used in all three statutes, means there is nothing to "separate restitution from conviction." *Brooks*, 872 F.3d at 90 (cleaned up); *see also United States v.*

6

*Volpendesto*, 755 F.3d 448, 453 (7th Cir. 2014) ("Restitution ordered under this authority, we believe, cannot be disentangled from the criminal conviction that underlies the sentence."). Because "reversal is reversal, regardless of the reason, and an invalid conviction is no conviction at all," no basis exists to collect restitution and the special assessment here.[2] *Nelson*, 581 U.S. at 136 n.10 (cleaned up).

    This understanding also compels the return of the restitution and special assessment money already paid. The Supreme Court's decision in *Nelson* is instructive. *Nelson* held that the government is "obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction" when that conviction "is invalidated by a reviewing court." *Id.* at 130. In answering this due process question, the Court observed that such a defendant has "an obvious interest in regaining the money they paid." *Id.* at 135. On the other side of the ledger, once the conviction is invalidated, the government "has no interest in withholding" this money to which it "currently has zero claim of right." *Id.* at 139. Thus, "[t]o comport with due process, [the government] may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.*

---

[2] "The fact that the decretal language" in the D.C. Circuit's order "used the word 'vacated' instead of 'reversed' does not change this result." *City of San Antonio v. Hotels.com, L.P.*, 959 F.3d 159, 164–65 (5th Cir. 2020), *aff'd* 593 U.S. 330 (2021). "[T]he *substance* of the disposition" indicates that his convictions have been invalidated. *Id.* at 165 (citing *Saunders v. Washington Metro. Area Transit Auth.*, 505 F.2d 331, 333 (D.C. Cir. 1974)); D.C. Circuit Order, ECF No. 528 at 2. *Schafer*, which the D.C. Circuit relied on here, explains that the convictions can no longer remain because "[f]inality [will] never [be] reached on the *legal question* of [Mr. Kinnison's] guilt." 240 F.3d at 38. "[T]he unpredictable grace of a presidential pardon" rendered his appeal moot, leaving "the efficacy of the jury verdict" unanswered. *Id.*

To hold otherwise would also conflict with fundamental principles about the finality of convictions. *See United States v. Libous*, 858 F.3d 64, 66–68 (2d Cir. 2017). "[A] criminal conviction is not final until resolution of the defendant's appeal as a matter of right." *United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997). Indeed, the Supreme Court has long regarded appellate review as "an integral part" of the system "for finally adjudicating the guilt or innocence of a defendant." *Griffin v. Illinois*, 351 U.S. 12, 18 (1956). Allowing the government to retain these conviction-dependent assessments and thereby "label [Mr. Kinnison] as guilty," *United States v. Est. of Parsons*, 367 F.3d 409, 413 (5th Cir. 2004), would conflict with his presumption of innocence, which "was restored," when his "convictions were erased," *Nelson*, 581 U.S. at 135. Consistent with this function of the appellate process in his case, Mr. Kinnison "is entitled to the return of" restitution and the special assessment. *Libous*, 858 F.3d at 69; *see also United States v. Ajrawat*, 738 F. App'x 136, 140 (4th Cir. 2018) (per curiam) (ordering a "refund [of] any portion of the special assessment that has already been paid" and "repayment of any other monies paid as a consequence of these [vacated] convictions").

## Conclusion

For these reasons, this Court should order a refund of the restitution and special assessment money that Mr. Kinnison has paid—$2,350.

Dated March 18, 2025.                                Respectfully submitted,

                                                     Rene L. Valladares
                                                     Federal Public Defender

                                                     *s/ Rohit Rajan*
                                                     Rohit Rajan
                                                     Assistant Federal Public Defender

8