UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

DEREK KINNISON,

    *Defendant.*

Case No. 1:21-cr-392-5 (RCL)

## MEMORANDUM ORDER

This case is before the Court on defendant Derek Kinnison's Motion [ECF No. 531] for Refund of Restitution and Special Assessment. The government also believes the defendant is entitled to the funds. Gov't Resp. at 2, ECF No. 541. However, because the Constitution dictates otherwise, the defendant's Motion will be denied.

### I. BACKGROUND

The defendant participated with hundreds of others in the Capitol Riots of January 6, 2021. As a member of the Southern California Three Percenters—a militia group formed in response to the results of the 2020 presidential election—the defendant and five other co-conspirators traveled from California to Washington, D.C. to join an effort to "throw off" their government. Presentence Investigation Report ¶ 53, ECF No. 427 ("PSR"). Unlike many other January 6 defendants, the defendant here appeared willing to use lethal force to achieve this goal, as he brought multiple firearms with him from California to Washington, D.C.[1] *Id.* ¶ 55. The defendant was on the front line in the advance against Capitol Police, and he remained on restricted Capitol grounds until late in the day. *Id.* ¶¶ 59, 64. Once it became clear that he would be investigated for his participation

---

[1] Although the government did not attempt to prove at trial that he brought any of his weapons from his hotel to the Capitol, it did prove that he wore a gas mask during the Riots. PSR ¶ 55.

1

in the Riots, the defendant destroyed evidence by deleting messaging apps that he had used to communicate with his co-defendants from his phone. *Id.* ¶ 66.

Based on this conduct, the government charged the defendant with five counts in an eight-count Second Superseding Indictment on May 10, 2023. ECF No. 210. Specifically, he was charged with (1) Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k); (2) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and (a)(2); (3) Entering and Remaining in a Restricted Building or Grounds and Carrying a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and (5) Tampering with Documents or Proceedings, in violation of 18 U.S.C. § 1512(c)(1). On November 7, 2023, a jury found the defendant guilty on all five counts. *See* Verdict Form, ECF No. 376.

The Court sentenced the defendant to thirty-three months incarceration on Counts 1, 2, and 5, and twelve months on Counts 3 and 4. Judgment at 3, ECF No. 472. The Court also ordered that the defendant pay a $350 assessment and $2,000 restitution, both payable to the Clerk of the Court for the United States District Court for the District of Columbia. *Id.* at 7–8. The defendant timely appealed his conviction, Notice of Appeal, ECF No. 480, and shortly thereafter he paid the $350 assessment and $2,000 restitution in full. Payment Receipt, Ex. A. to Mot. for Refund, ECF No. 531-2. While the appeal was still pending with the D.C. Circuit, the President granted pardons to "to all . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331, 8331 (Jan. 29, 2025); *see also* Certificate of Pardon, Ex. B. to Mot. for Refund, ECF No. 531-3. The government then moved for vacatur of the defendant's conviction in the D.C. Circuit, which that court granted

with instructions to this Court to dismiss the case as Moot on remand. Mandate of USCA, ECF No. 528. In accordance with the D.C. Circuit's mandate, this Court dismissed the case as moot. Order of February 13, 2025, ECF No. 529. Shortly thereafter, the defendant filed the instant Motion for an order directing that he be refunded the $2,350 he had paid to satisfy the special assessment and restitution.

At least four courts in this district, including this one, have ruled that January 6 defendants are not entitled to return of payments they made connected their convictions. *See United States v. Sullivan*, --- F. Supp. 3d ---, 2025 WL 1444392 (D.D.C. May 20, 2025) (Lamberth, J.); *United States v. Vargas*, --- F. Supp. 3d ---, 2025 WL 1786681 (D.D.C. June 27, 2025) (Moss, J.); *United States v. Hager*, No. 21-cr-381, 2025 WL 1886135 (D.D.C. Jul. 3, 2025) (Chutkan, J.); *United States v. Sutton*, No. 21-cr-598, 2025 WL 2149396 (D.D.C. Jul. 15, 2025) (Friedman, J.). Those courts, in turn, have each relied on the Supreme Court's holding in *Knote v. United States*, 95 U.S. (5 Otto) 149 (1877). In *Knote*, a Confederate sympathizer sought return of certain property that the United States had confiscated and sold during the Civil War pursuant to the Confiscation Act of 1862. *See* Confiscation Act of July 17, 1862, § 6, 12 Stat. 589. Knote, like the defendant here, received a presidential pardon for his crimes against his country, and he, too, sought return of his property after the pardon.[2] In denying Knote's request, the Supreme Court recognized that although a pardon "release[s] [the pardoned individual] from the consequences of his offence," it nevertheless does not give a pardoned individual the right to "proceeds [that] have been paid into the treasury." *Knote*, 95 U.S. at 154. The Court concluded that funds deposited into the United States Treasury can only be withdrawn by the passage of an appropriation law by Congress. *Id.*

---

[2] Notably, neither the Supreme Court case nor the accompanying Court of Federal Claims case dealing with Knote's claims give any indication that he was ever actually convicted of treason. *See Knote*, 95 U.S. at 149–52; *see also Knote v. United States*, 10 Ct. Cl. 397, 398 (1874); *Vargas*, 2025 WL 1786681, at *3 (highlighting this peculiar fact).

In other words, the Appropriations Clause of the Constitution places a limit on the pardon power: "it cannot touch moneys in the treasury of the United States, except expressly authorized by act of Congress." *Id. Knote* therefore instructs that money that has either vested in others or has been paid into the treasury cannot be extracted by the courts.

The defendant here urges this Court to look not to *Knote* but instead to *Nelson v. Colorado*, 581 U.S. 128 (2017). In *Nelson*, a group of pardoned defendants sought recovery of criminal payments they had deposited into state accounts. *Id.* at 130. Their obstacle to recovery was not federal law or the Constitution but instead a Colorado statute that required defendants to prove their actual innocence by clear and convincing evidence before recovering criminal payments. *Id.* at 132. The Supreme Court held that the Colorado statute violated the petitioners' procedural due process rights because, upon the reversal of their convictions, "the presumption of their innocence was restored." *Id.* at 135.

The defendant attempts to draw a parallel between the reversal of the petitioners' convictions *Nelson* and the vacatur of his conviction by the D.C. Circuit. The defendant refers to his conviction as "invalid" in an attempt to mirror the language of *Nelson*. The Supreme Court in *Nelson* referred to the petitioners' convictions as invalid because their convictions had been *reversed*, one on appeal for trial error and one in postconviction proceedings. *Id.* at 131. But here, the defendant's conviction was not reversed; rather, the only reason the conviction was vacated by the Circuit is that the defendant received a presidential pardon. And in any event, the Court's power to order a refund does not turn on whether the defendant's conviction was vacated: it turns on whether he is entitled to the funds. The defendant paid the full $2,350, and it was deposited into the U.S. Treasury, before the presidential pardon issued. He is therefore no longer entitled to the funds as "the right to them has . . . become vested in the United States." *Knote*, 95 U.S. at 154.

4

The government attempts to save the defendant's argument by referring to the deposit of funds in the Treasury as "erroneous." *E.g.*, Gov't Resp. at 2. They do so in an effort to invoke 31 U.S.C. § 1322(b)(2), which allows the refund of "moneys erroneously received" by the United States Treasury. But the funds at issue here were not "erroneously received" as that statute intends the word. As the Supreme Court made clear in *Knote*, a "pardon is an act of grace," but it "does not make amends for the past." *Knote*, 95 U.S. at 153. Once an "offence [is] established by judicial proceedings, that which has been done or suffered while they were in force is presumed to have been rightfully done and justly suffered." *Id.* at 154. The defendant's conviction was fully "in force" at the time he paid the $2,350 in assessments and restitution. Therefore, the funds were not "erroneously received" by the Treasury, and the Court will not—indeed, it may not—order a refund here. *Accord Vargas*, 2025 WL 1786681, at *4.

Accordingly, the defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

Date: August 13, 2025

Royce C. Lamberth
United States District Judge